**EMPLOYERS INSURANCE OF WAUSAU, etc., Plaintiff,**

v.

**ALBERT D. SEENO CONSTRUCTION CO., et al., Defendants.**

**No. C–86–4890 EFL.**

United States District Court, N.D. California.

July 29, 1988.

Dale I. Larson, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., Rogers, Joseph, O'Donnell & Quinn, San Francisco, Cal., for plaintiff.

H. Paul Breslin, Robert L. Sallander, Jr., Archer, McComas & Lageson, Walnut Creek, Cal., for defendants.

## ORDER

LYNCH, District Judge.

This diversity case began as a declaratory judgment action by an insurance company seeking a declaration that it is not liable for third-party claims alleging faulty work by one of its insureds, a home construction firm and developer. Plaintiff has now moved to disqualify the primary defendant's lead counsel. Defendant has in turn cross-moved to disqualify plaintiff's main counsel. For the reasons discussed below, the Court denies both motions.

## BACKGROUND

Defendant Albert D. Seeno Construction Company (collectively with associated defendants "Seeno") is a real estate developer that obtained various insurance policies from plaintiff Employers Insurance of Wausau ("Wausau") in connection with Seeno's construction of a large number of homes. Buyers of several hundred of those homes brought claims against Seeno for a variety of alleged construction defects. After Seeno submitted these claims to Wausau, dispute arose as to whether these claims are covered by Seeno's policies with Wausau and regarding the proper method of handling these third-party claims. Wausau reserved its rights to deny coverage, and in March 1986 Seeno exercised its rights to engage independent *Cumis* counsel paid for by Wausau.[1] Seeno has requested that Wausau take responsibility for handling claims that have not yet reached formal litigation (the "unlitigated claims"), but Seeno's *Cumis* counsel

---

1. *See, e.g., San Diego Navy Federal Credit Union v. Cumis Ins. Society, Inc.,* 162 Cal.App.3d 358, 208 Cal.Rptr. 494 (1984) (clearly establishing insured's right to select independent counsel paid for by insurer where an actual or potential conflict has arisen between insured and insurer); notes 5–11 and accompanying text *infra*.

have handled the claims that have reached litigation (the "litigated claims").

In August 1986, Wausau brought this declaratory judgment action seeking a declaration that it is not liable for the claims. Plaintiff also asserts that Seeno has breached its contractual obligations and duties of good faith and fair dealing and seeks recovery of the sums Wausau has advanced to the insured to defend and settle the third-party claims. Seeno has brought various counterclaims including breach of contract, bad faith, fraud, and violation of the California Insurance Code.

In the latest stage of this acrimonious litigation, Wausau has moved to disqualify Seeno's counsel, Archer, McComas & Lageson ("Archer"), and Seeno has responded by cross-moving to disqualify Wausau's primary counsel, Robins, Zelle, Larson & Kaplan ("Robins"). The arguments of the parties are considered in turn below.

## DISCUSSION

The Court of course has the duty of supervising the conduct of attorneys practicing before it, and part of that duty is to disqualify counsel if necessary. *See, e.g., Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir.1983); *Cable Oakland v. Wilson*, 201 Cal.App.3d 530, 534, 247 Cal.Rptr. 778 (1988). Counsel practicing before this Court are expressly made subject to the ethical requirements applicable to attorneys practicing law in the State of California pursuant to the Local Rules of the Northern District.[2] In addition to the Rules of Professional Conduct of the State Bar of California (the "California Rules"), these requirements include those contained in the American Bar Association Model Code of Professional Responsibility (the "Model Code"), because California courts look to the Model Code in

determining issues not fully addressed in the California Rules. *E.g., Paul E. Iacono Structural Engineer, Inc. v. Humphrey,* 722 F.2d 435, 439–40 & n. 6 (9th Cir.), *cert. denied,* 464 U.S. 851, 104 S.Ct. 162, 78 L.Ed.2d 148 (1983); *Atasi Corp. v. Seagate Technology,* 847 F.2d 826, 830 & n. 4 (Fed. Cir.1988) (applying 9th Circuit law); *see, e.g., Cable Oakland,* 201 Cal.App.3d at 537–38, 247 Cal.Rptr. 778; *Cumis,* 162 Cal. App.3d at 366–67, 370, 374–75, 208 Cal. Rptr. 494.

## I. CROSS–MOTIONS TO DISQUALIFY UNDER CUMIS

Both parties bring motions to disqualify based on alleged breaches of the duties of counsel in the *Cumis* context, i.e., where the insured has exercised its right to select independent counsel paid for by the insurer because a conflict or potential conflict has arisen between the insurer and the insured. In brief, the insurer Wausau argues that the insured Seeno's choice of *Cumis* counsel, the Archer firm, has failed properly to represent Wausau's interests. Seeno, on the other hand, argues that the counsel chosen by Wausau, the Robins firm, has failed properly to represent Seeno's interests.

### A. *Wausau's Motion to Disqualify the Archer Firm*

Plaintiff's first argument for disqualification of Seeno's counsel Archer is based on that firm's conceded double role as 1) *Cumis* counsel opposing liability in the underlying home buyers' claims, and 2) counsel asserting coverage by Wausau.[3] Plaintiff argues that in its *Cumis* counsel role Archer is representing Wausau as well as Seeno, and that it is therefore an improper concurrent representation of adverse interests for Archer to represent See-

---

**2.** Local Rule 110–3 of the United States District Court for the Northern District of California provides in pertinent part that:

Every member of the bar of this court and any attorney permitted to practice in this court ... shall be familiar with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar

of California, and decisions of any court applicable thereto....

**3.** For clarity, the Court shall use the term "liability" to refer to the potential liability of the insured or the insurer to a third party, and the term "coverage" to refer to the potential liability of the insurer to the insured, unless otherwise indicated.

no in a coverage dispute such as the instant case, where Seeno's interests are directly adverse to Wausau.[4]

Plaintiff relies chiefly on cases stating that counsel retained by an insurer to defend an insured have both the insured and the insurer as clients. *E.g., Bogard v. Employers Casualty Co.*, 164 Cal.App.3d 602, 609, 210 Cal.Rptr. 578 (1985) ("The attorney hired by the insurance company to defend in an action against the insured owes fiduciary duties to two clients: the insurer and the insured." (citations omitted)). Wausau argues that the *Cumis* line of decisions has not changed the dual duties of liability defense counsel; it simply allows the insured rather than the insurer to select such counsel. *Cumis* counsel thus always represents both the insured and the insurer.

Wausau views *Cumis* counsel as properly concerned only with minimizing liability to third parties, and as necessarily completely *neutral* with respect to any coverage dispute between its two clients, the insured and the insurer. Accordingly, Wausau asserts that *Cumis* counsel is "independent" not of the insurer but rather in the sense that such counsel seeks to minimize liability in a neutral fashion, independent of any regard for the coverage position of either client. According to this argument, as *Cumis* counsel chosen by Seeno, Archer represents Wausau as well as the insured, and it is therefore a patent conflict for Archer also to represent Seeno's interests against Wausau in this coverage action.

In order to decide the merits of this argument as well of that of defendant discussed below, it is necessary to examine the proper roles and duties of counsel under *Cumis* law, which has been undergoing a somewhat uncertain evolution. It is now beyond question that under certain circumstances an insurer is obligated to pay for "independent" counsel chosen by the insured. As noted above, the leading case, from which the name of such counsel is taken, is *San Diego Navy Federal Credit Union v. Cumis Ins. Society, Inc.*, 162 Cal.App.3d 358, 208 Cal.Rptr. 494 (1984). In *Cumis*, the California Court of Appeal recognized that:

> In the usual tripartite relationship existing between insurer, insured and counsel, there is a single, common interest shared among them. Dual representation by counsel is beneficial since the shared goal of minimizing or eliminating liability to a third party is the same. A different situation is presented, however, when some or all of the allegations in the [third-party] complaint do not fall within the scope of coverage under the policy. In such a case, the standard practice of an insurer is to defend under a reservation of rights where the insurer promises to defend but states it may not indemnify the insured if liability is found.

*Id.* at 364, 208 Cal.Rptr. 494.

In such situations, the court found, a conflict arises between the insurer and the insured, because it is in the insurer's interest for the third-party action to establish that any liability is outside the coverage of the policy, while it is in the insured's interest to show the opposite.[5] After reviewing

---

4. The following are the most pertinent California Rules in this regard:

Rule 4–101. Accepting Employment Adverse to a Client

A member of the State Bar shall not accept employment adverse to a client or former client, without the informed and written consent of the client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client.

Rule 5–102. Avoiding the Representation of Adverse Interests

(A) A member of the State Bar shall not accept professional employment without first

disclosing his relation, if any, with the adverse party, and his interest, if any, in the subject matter of the employment. A member of the State Bar who accepts employment under this rule shall first obtain the client's written consent to such employment.

(B) A member of the State Bar shall not represent conflicting interests, except with the written consent of all parties concerned.

5. For example, if a policy of insurance covers unintentional but not intentional acts, it is in the insurer's interest that the third-party action find either no liability or that there is liability based on an intentional act, while it is in the insured's interest that either no liability or lia-

the ethical dilemma posed for counsel in this conflict situation, the *Cumis* court held that:

> [T]he [Model Code] Canons of Ethics impose upon lawyers hired by the insurer an obligation to explain to the insured and the insurer the full implications of joint representation in situations where the insurer has reserved its rights to deny coverage. If the insured does not give an informed consent to continued representation, counsel must cease to represent both. Moreover, ... the insurer must pay the reasonable cost for hiring independent counsel by the insured. The insurer may not compel the insured to surrender control of the litigation.

162 Cal.App.3d at 375, 208 Cal.Rptr. 494 (citations omitted).

Although the wisdom and cost of the *Cumis* decision[6] have been debated, the California Supreme Court has not indicated any inclination to depart from it, and the legislature has recently codified and to some extent clarified the *Cumis* approach. *See* 1987 Cal.Stat. ch. 1498, § 4 (codified at Cal.Civ.Code § 2860 (West Supp.1988) [hereinafter section 2860]).[7] It is therefore the law in California and applicable by the Court in diversity actions such as this. *See, e.g., Previews, Inc. v. California Union Ins. Co.*, 640 F.2d 1026, 1027–28 (9th Cir.1981).

Plaintiff Wausau does not challenge *Cumis* itself and indeed concedes the right and has paid the considerable cost of de-

fendant Seeno to be provided with *Cumis* counsel to defend many of the home buyers' claims. However, Wausau asserts that because the Archer firm is *Cumis* liability counsel, it is impermissible conflict for Archer to serve also as Seeno's coverage counsel. This argument thus requires that the Court determine whether *Cumis* counsel represent or owe duties to the insurer such that *Cumis* counsel cannot represent the insured in coverage disputes with the insurer.

The starting point for determining to whom *Cumis* counsel owe what duties is the seminal California case *Executive Aviation, Inc. v. National Ins. Underwriters*, 16 Cal.App.3d 799, 94 Cal.Rptr. 347 (1971). In finding that an insurer was obligated to pay for the fees of independent counsel selected by the insured, the court followed the "reasonable solution" proposed in *Prashker v. United States Guarantee Co.*, 1 N.Y.2d 584, 154 N.Y.S.2d 910, 136 N.E.2d 871 (1956), stating that:

> [W]here a conflict of interest has arisen between an insurer and its insured, the attorney to defend the insured in the tort suit should be selected by the insured and the reasonable value of the professional services rendered assumed by the insurer. If the insured and the insurer are represented by two different attorneys, each of whom is pledged to promote and protect the prime interests of his client, adequate representation is guaranteed and the deleterious effect of

bility based on an unintentional act be found. As the *Cumis* court observed, "[a]lthough issues of coverage under the policy are not actually litigated in the third party suit, this does not detract from the force of these opposing interests as they operate on the attorney selected by the insurer, who has a dual agency status." *Cumis*, 162 Cal.App.3d at 364–65, 208 Cal.Rptr. 494. (citation and footnote omitted).

6. While *Cumis* is often discussed as though it were a groundbreaking case, it is more notable for having brought a concept to common knowledge than for developing any new rule of law. As the *Cumis* court itself noted:

> "It has long been the law in this state that when a conflict develops, the insurer cannot compel the insured to surrender control of the litigation, and must, if necessary, secure independent counsel for the insured, and, as

was explained in *Previews, Inc. v. California Union Ins. Co.* (9th Cir.1981) 640 F.2d 1026, 1028, the insurer's obligation [to defend, after the appearance of a conflict] 'extends to paying the reasonable value of legal services and costs performed by independent counsel selected by the insured.'" *Cumis*, 162 Cal.App.3d at 364 n. 3, 208 Cal.Rptr. 494 (quoting *Purdy v. Pacific Automobile Ins. Co.*, 157 Cal.App.3d 59, 76, 203 Cal.Rptr. 524 (1984)) (citations omitted) (brackets in original).

7. The parties have not disputed the applicability of the statute, which came into legal force on January 1, 1988, pursuant to Cal. Const. art. IV, § 8. *See United Pacific Ins. Co. v. Hall*, 199 Cal.App.3d 551, 553 n. 1, 245 Cal.Rptr. 99 (1988).

the conflict of interest imposed on an attorney who attempts the difficult task of representing both parties is averted. *Executive Aviation,* 16 Cal.App.3d at 809, 94 Cal.Rptr. 347. Like the New York Court of Appeals in *Prashker,*[8] the *Executive Aviation* court thus appears to have assumed that *Cumis* counsel would represent only the insured, and that the insurer would be entitled to counsel that would represent only the insurer.

Similarly, the *Cumis* court itself contemplated that being "the insureds' *independent* counsel" meant representing the insureds, and being independent of the insurer. *Cumis,* 162 Cal.App.3d at 375, 208 Cal.Rptr. 494 (emphasis added). Thus, the court quoted with approval statements such as:

> "Where a question exists as to whether an occurrence is within coverage, independent counsel *representing the insured's interests* is required. The insurer is contractually obligated to pay for *insured's independent counsel.*"

*Id.* at 374, 208 Cal.Rptr. 494 (quoting Dondanville, *Defense Counsel Beware: The Perils of Conflicts of Interest,* 26 Trial Law.Guide 408, 415 (1982)) (emphasis added). Nor does the *Cumis* court appear to have believed that it is ethically possible to continue joint representation without consent once conflict has arisen. To take another example quoted by the court: " 'once the insurer decides to assert a coverage defense, the same attorney may not represent both the insured and the insurer.' " *Id.* (quoting Committee on Professional Responsibility of the State Bar of Louisiana Opinion No. 342, 22 La.B.J. O–132 [within insert following page 46] (1974)). Indeed, it was precisely because "dual agency" representation is ethically impossible that the *Cumis* court required the insurer to pay for independent counsel for the insureds. *Id.* at 364–65 & n. 4, 374–75, 208 Cal.Rptr. 494. Since the attorney initially chosen by the insurer cannot ethically serve in both such capacities, the same logic requires the conclusion that the *Cumis* attorney for the insured may not either.

Other cases support the same conclusion.[9] For example, in *Bogard,* the court

8. In *Prashker,* New York's highest court does not appear to have doubted that the counsel selected by the insured represented the insured alone:

> The objection taken by the insurance company is without substance that it would subject to divided loyalty any attorneys who might defend the action, in that their duty to the assureds would be to endeavor to defeat recovery on any ground, whereas their duty to the insurance company would be to defeat recovery only upon such grounds as might render the insurance company liable. If any such conflict of interest arises, as it probably will, the selection of the attorneys to represent the assureds should be made by them rather than by the insurance company, which should remain liable for the payment of the reasonable value of the services of whatever attorneys the assureds select.

1 N.Y.2d at 593, 154 N.Y.S.2d 910, 136 N.E.2d 871.

9. Wausau's attempt to rely on *MGIC Indemnity Corp. v. Weisman,* 803 F.2d 500 (9th Cir.1986), is not compelling, although that case does contain the following broad language:

> When [counsel] took the defense of the suits against the [insureds], the [insureds] were their .clients. But it is an untenable simplification to say that they had no duty to the [insurer] they knew would pay the legal fees of the [insureds]. A lawyer may have more than a single client in a lawsuit. A "client" is the person or entity on whose behalf a lawyer acts. [Counsel] were acting for the insurer as well as for the insured[s]....
> ... Anyone paying legal bills would want to know, and would be entitled to know, that the lawyers being paid were the very lawyers who started the suits they were now being compensated to defend. The alleged failure to disclose their activity would have been a breach of the fiduciary duty [counsel] owed [the insurer].

*Id.* at 504. First, of course, the *MGIC* case involved the law of Hawaii, not California. The Ninth Circuit was not concerned with *Cumis* jurisprudence, as is evident from its lack of any citation to relevant authority.

Second, the representation provided by the insurer in *MGIC* was apparently supplied pursuant to specific contractual terms, not because of principles of conflict of interest, and the court made no analysis of the latter issue. *MGIC's* result was seemingly based on the assumption that the same counsel were representing both the insurer and the insured despite conflict and without disclosure and consent. *Cumis* counsel on the other hand are selected by the insured *after* disclosure of conflict and refusal of consent in order to *alleviate* the ethical dilemma posed by the joint representation assumed by the *MGIC* court. *MGIC* thus appears to be most analogous to the situation *before Cumis* counsel

of appeal clearly recognized that *Cumis* counsel is hired to fulfill the insurer's duty to provide "independent counsel to represent the *insured's* interests" in order to avoid "the impossible ethical dilemma with which the attorney representing both insured and insurer in such a [conflict] situation is faced." *Bogard*, 164 Cal.App.3d at 613, 210 Cal.Rptr. 578 (emphasis added); *see also id.* at 614, 210 Cal.Rptr. 578. Likewise in *United Pacific Ins. Co. v. Hall*, 199 Cal.App.3d 551, 245 Cal.Rptr. 99 (1988), the court had no doubt that "[t]he obligation of an insurer to provide independent *Cumis* counsel for an insured is premised on the ethical inability of an attorney to represent conflicting interests." *Id.* at 556, 245 Cal. Rptr. 99 (citation omitted). Nor has the Court discovered any case holding that *Cumis* counsel are somehow exempted from the ethical rules that make it impossible to represent conflicting interests without consent.

■ Case law thus leaves little doubt that *Cumis* counsel represent solely the insured, and accordingly that there is no ethical requirement that prevents *Cumis* counsel from representing the insured in coverage actions adverse to the insurer as well as in liability matters.[10]

The recent enactment of California Civil Code § 2860 is also strong support for the view that *Cumis* counsel do not represent the insurer. Most relevantly, section 2860(a) provides in pertinent part that:

> "If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide such counsel *to represent the insured....*"

(Emphasis added.) Similarly, section 2860(f) provides in relevant part that such counsel have an "ethical and legal obligation *to the insured.*" (Emphasis added.) On the other hand, the statute says nothing about the kind of obligation Wausau alleges is owed to it as the insurer by *Cumis* counsel.

At least one other factor indicates that Wausau's view of the role of *Cumis* counsel is unlikely to be accepted in California. The *Cumis* line of cases evolved out of express concern that counsel representing the insurer as well as the insured might prejudice the insured's coverage and liability positions by favoring the insurer's coverage position. *See, e.g., Cumis*, 162 Cal. App.3d at 364, 208 Cal.Rptr. 494 (" 'The [insurance] Carrier is required to hire independent counsel because an attorney in ac-

---

are chosen, and it is therefore of little value in determining what the duties of *Cumis* counsel are.

Moreover, it would certainly be "an untenable simplification," *MGIC*, 803 F.2d at 504, to read *MGIC* as holding that one who pays a lawyer's fee always becomes a client or that the lawyer automatically owes such a person duties of loyalty and candor. *See, e.g., Cumis*, 162 Cal. App.3d 358, 208 Cal.Rptr. 494; Model Code Ethical Canons ("EC") 5–1, 5–21 to 5–23; Model Code Disciplinary Rule ("DR") 5–107(A)–(B); Los Angeles Bar Association Ethics Committee Opinion No. 439 (February 24, 1986) [hereinafter Bar Opinion No. 439] at 5–6.

Accordingly, as the *Cumis* court itself found in rejecting another Ninth Circuit decision, *Zieman Manufacturing Co. v. St. Paul Fire & Marine Ins. Co.*, 724 F.2d 1343 (9th Cir.1983), the California Supreme Court is unlikely to find *MGIC* persuasive. *Cf. Cumis*, 162 Cal.App.3d at 373 n. 8, 208 Cal.Rptr. 494 ("It is apparent the [*Zieman*] Court of Appeals did not address the merits of the conflict of interest issue. Thus, *Zieman* does not represent a holding on the

issue we consider. Moreover, to the extent *Zieman* could be read as deciding the issue we consider, it does not reflect California law.")

10. The Court also notes that an opinion of the Los Angeles Bar Association Ethics Committee on facts quite similar to those in this case has reached the same result, stating that:

> The clear implication of [*Cumis*] is that there is no attorney-client relationship between the insured's counsel and the insurer despite the fact that the insurer is paying for the independent counsel.....
> ... Moreover *Cumis* holds that such an attorney[-]client relationship is impossible.

Bar Opinion No. 439 at 5–6. The committee therefore found it entirely proper for *Cumis* counsel representing the insured in a third-party action to represent the insured in the coverage case against the insurer as well. *See id.* at 6.

However, it should be obvious that this conclusion in no way suggests that the insurer is answerable for the cost of the insured's counsel's work in coverage actions; that expense of course must ordinarily be borne by the insured.

tual trial would be tempted to develop the facts to help his real client, the Carrier Company, as opposed to the Insured, for whom he will never likely work again.... A lawyer who does not look out for the Carrier's best interest might soon find himself out of work.'" (quoting trial court opinion)). Given the nature of this problem and the courts' determination to alleviate it, it seems highly unlikely that the *Cumis* line of decisions or the legislature's codification of it meant to allow the essential nature of the joint representation to remain the same, and merely to allow the insured rather than the insurer to make the initial selection of the counsel that would represent both of them. Rather, the Court believes that the *Cumis* decisions intended to eliminate the ethical dilemmas and temptations that arise along with conflict in joint representations, and that they accomplished this through mandating the insured's right to *Cumis* counsel that represent only the insured.

■ This is not to say, however, that *Cumis* counsel necessarily owe *no* duties to the insurer.[11] The Court simply holds that any such duties do not as a matter of law create an attorney-client relationship between *Cumis* counsel and the insurer or otherwise make *Cumis* counsel vulnerable to disqualification at the instance of the insurer. The Court accordingly concludes that *Cumis* counsel do not as a matter of law have a relationship with the insurer that precludes such counsel from representing the insured in coverage disputes adverse to the insurer. Plaintiff has not shown that in law or fact the Archer firm has represented Wausau's interests, and it

therefore cannot be concluded that Archer has breached the ethical strictures against representation of adverse interests. Plaintiff's first argument to disqualify the Archer firm is unavailing.

### B. Seeno's Motion to Disqualify the Robins Firm

■ Defendant's motion to disqualify plaintiff's counsel also hinges on the proper role of counsel in the *Cumis* context, but the focus is now on the duties of counsel chosen by the insurer rather than on those of *Cumis* counsel chosen by the insured. The thrust of defendant's motion is based on the Robins firm's alleged double role as 1) counsel opposing coverage by Wausau, and 2) counsel opposing liability by Seeno. Defendant argues that in its second, disputed role Robins has been representing Seeno as well as Wausau, and that it is therefore an improper concurrent representation of adverse interests for Robins to represent Wausau in a coverage dispute such as this one, where Wausau's interests are directly adverse to Seeno's.

Defendant asserts that counsel selected by the insurer to assist in the handling of liability disputes necessarily have a dual agency status involving attorney-client duties to both the insurer and the insured. Defendant contends that such counsel's primary duty is to the insured, and that Robins has breached this duty by its conflicting representation of Wausau in the adverse coverage disputes. Defendant further argues that Wausau has a duty to segregate its handling of coverage and liability disputes, and that the Robins firm has not done so.[12]

11. For example, it is now clear that *Cumis* counsel as well as the insured have the duties imposed by section 2860(d). Those duties are: to disclose to the insurer all information concerning the action except privileged materials relevant to coverage disputes, and timely to inform and consult with the insurer on all matters relating to the action.

However, there is no indication in the statute or elsewhere that these duties create an attorney-client relationship with the insurer, or that the insurer may remedy breaches of such duties by moving to disqualify *Cumis* counsel. Instead, it would seem that the insurer's remedy would lie in claims such as breach of the cove-

nant of good faith and fair dealing which plaintiff has in fact already asserted against its insured in this action.

12. In light of the Court's finding below that Robins has not represented Seeno, it is not necessary to reach defendant's arguments that Wausau and its counsel have breached a duty to segregate coverage from liability handling. Regardless of whether defendant might prevail on such claims under evolving bad faith or malpractice law, they are not a basis for disqualification in this case.

As defendant vigorously asserts, it is of course true that counsel engaged by the insurer to defend claims against the insured in third-party actions [13] are normally representing the interests of the insured as well as the insurer. *E.g., Purdy v. Pacific Automobile Ins. Co.*, 157 Cal.App.3d 59, 76, 203 Cal.Rptr. 524 (1984) ("We recognize that traditionally, where an insurance carrier is called upon to defend its insured, the attorney retained by the carrier for this purpose owes the same fiduciary duty to the insured as he or she would had the insured made the selection of counsel. The attorney's primary duty has been said to be to further the best interests of the insured." (citations omitted)). As discussed above, when an actual or potential conflict arises, it is also clear that the insured has the right to select *Cumis* counsel to represent *solely* the insured's interests. By the same token however, the insurer may engage counsel to represent solely the *insurer's* interests. This has long been the law, and developments in the *Cumis* area have not changed it.

Arguing to the contrary, defendant attempts to rely chiefly on *Lysick v. Walcom*, 258 Cal.App.2d 136, 65 Cal.Rptr. 406 (1968), which was decided before either *Cumis* or *Executive Aviation*. In *Lysick*, an attorney was retained by an insurer to defend against the liability of its insured in a wrongful death action and was thus representing both the insurer and the insured. However, after discovering a conflict between his clients and without fully disclosing the conflict or obtaining both his clients' informed consent, the attorney engaged in settlement negotiations solely on behalf of the insurer. The court of appeal had no difficulty finding that as a matter of law the attorney had continued to represent the insured, 258 Cal.App.2d at 146–48, 65 Cal.Rptr. 406, and that in so doing he

had "violated the legal and ethical concepts which delineated his duties to the [insured]," *id.* at 151, 65 Cal.Rptr. 406; *see also id.* at 153, 65 Cal.Rptr. 406.

*Lysick* goes on to clarify, however, that an attorney's duties are "commensurate with the extent of his employment," *id.* at 149, 65 Cal.Rptr. 406, and that it is perfectly permissible for the insurer to engage counsel to represent solely the insurer's interests, *id.* at 149–50, 65 Cal.Rptr. 406. Moreover, *Lysick* recognized that such counsel have *no* ethical duties to the insured. *Id.* at 149–50, 65 Cal.Rptr. 406. Thus, citing Keeton, *Liability Insurance and Responsibility for Settlement*, 67 Harv.L.Rev. 1136, 1167–71 (1954), the court observed that the insured and the insurer:

> may create a relationship under which the attorney has no duty to the insured in the matter of settlement. In such a situation, ... the settlement decision has no significance between the insured and the attorney who is representing the defense in court. It is essential in such case, however, that the parties clearly understand that the client-attorney relationship does not extend to the matter of settlement, and if circumstances indicate that the insured may be misled, the attorney has the duty to make it clear to the insured that he represents only the [insurance] company with respect to settlement.

*Lysick*, 258 Cal.App.2d at 149–50, 65 Cal. Rptr. 406 (citation omitted). The attorney's failure in *Lysick* was in failing to disclose that he intended to represent only the insurer in settlement and to obtain the insured's consent to that representation; contrary to Seeno's reading of the case, *Lysick* never suggests that the insurer was not entitled to counsel to represent solely its interests. Nor have subsequent cases changed this result.

**13.** Although published cases typically concern claims in which a lawsuit has actually been filed, there appears to be no reason to find that ethical requirements should not apply simply because the claims dispute process has not yet reached the formal stage of litigation. Rather, the crucial question is whether counsel have been engaged to represent the insured. *Cf. Houston General Ins. Co. v. Superior Court*, 108

Cal.App.3d 958, 166 Cal.Rptr. 904 (1980); *Glacier General Assurance Co. v. Superior Court*, 95 Cal.App.3d 836, 157 Cal.Rptr. 435 (1979). In any event, since in this case many claims have already reached formal litigation and *Cumis* counsel have long since been retained, the Court finds that it is not necessary to distinguish for ethical purposes between the litigated and unlitigated claims.

■ As noted above, in *Executive Aviation* itself the court found that such representation was proper; indeed, the court clearly believed separate counsel for the insurer and the insured to be the best and most efficient model for ensuring adequate representation in the conflict situation:

> If the insured and the insurer are represented by two different attorneys, each of whom is pledged to promote and protect the prime interests of his client, adequate representation is guaranteed and the deleterious effect of the conflict of interest imposed on an attorney who attempts the difficult task of representing both parties is averted.

*Executive Aviation,* 16 Cal.App.3d at 809, 94 Cal.Rptr. 347. The court also expressly contemplated that its "reasonable solution" would sometimes require "two attorneys for one action."[14]  16 Cal.App.3d at 810, 94 Cal.Rptr. 347.

More recently, in *Bogard v. Employers Casualty Co.,* 164 Cal.App.3d 602, 210 Cal. Rptr. 578 (1985), the court of appeal again found it proper for an insurer to retain counsel to represent solely the insurer's interests, and that such representation is consistent with *Cumis* law:

> Based on *Lysick,* [the insurer] was free to hire counsel to represent it, and not [the insureds] at the settlement phase. However, that did not relieve [the insurer] of its duty to continue to defend [the insureds] either by retaining independent counsel for them itself, or by undertaking the payment of fees incurred by [the insureds] as a result of retaining cocounsel for the settlement negotiations.

*Bogard,* 164 Cal.App.3d at 614, 210 Cal. Rptr. 578.

■ Accordingly, it is clear that Robins does not, as a matter of law, represent defendant Seeno simply because it represents Wausau with respect to third-party

14. It appears that more than two counsel may sometimes be called for. For example, if the insurer is not satisfied with the insured's selection of *Cumis* counsel, it is now clear that the insurer may provide other counsel to participate in the defense of the third-party action. As noted above, section 2860(f) provides in pertinent part that:

> Where the insured selects independent counsel pursuant to the provisions of this section, both the counsel provided by the insurer and independent counsel selected by the insured shall be allowed to participate in all aspects of the litigation. Counsel shall cooperate fully in the exchange of information that is consistent with each counsel's ethical and legal obligation to the insured.

Although the statute is not a model of clarity, it is evident that absent consent such insurer-selected counsel cannot be the same counsel representing the insurer, because the statute expressly provides that the insurer-selected counsel participating in the third-party action have an "ethical and legal obligation to the insured." *Id.* Because the participating insurer-selected counsel, like the *Cumis* counsel selected by the insured, owe ethical duties to the insured, such counsel are essentially just a second *Cumis* counsel, chosen by the insurer instead of the insured. In order to avoid falling afoul of the "impossible ethical dilemma" that mandates the provision of *Cumis* counsel in the first place, these liability defense counsel must obviously be completely separate from the counsel representing the insurer.

This conclusion is strengthened by further consideration of the statute. Section 2860's sole reference to counsel other than the independent counsel, "counsel provided by the insurer," *id.* § 2860(f), suggests that, like the independent counsel "provide[d]" by the insurer, *id.* § 2860(a), such insurer-chosen counsel are "*provided by*" the insurer to represent the insured. Had the legislature meant to refer to counsel representing the insurer, it presumably would have indicated that intention by using a phrase such as "counsel representing the insurer" or "counsel for the insurer." Given that the legislature did not do so, the fact that such a result would be a dramatic departure from legal ethics law in general and *Cumis* law in particular, and the presumption that the legislature is fully aware of such law, it appears that such second counsel are simply the insurer's choice of counsel to represent the *insured. But see* 1987–1988 Cal.Legis.Serv. 847 (West) (Legislative Counsel's Digest) ("[The statute] ... would require cooperation between independent counsel and *counsel for the insurer.*" (emphasis added)). Moreover, the Court notes that a contrary result would seem likely to revolutionize third-party actions where coverage is disputed, turning them into three-way battles over coverage as well as liability.

Thus, in disputes over coverage where the insurer wishes to choose counsel to participate in the third-party action, there may typically be three counsel: 1) insurer-selected counsel for the insured that may participate in the third-party liability action, 2) independent *Cumis* counsel for the insured, and 3) counsel for the insurer.

claims against Seeno. In light of defendant's arguments, it is next necessary to determine whether Robins has represented Seeno as a matter of fact. If not, Robins cannot have breached any ethical duty to Seeno because Robins has no ethical duties to Seeno, and defendant's motion to disqualify must be denied.

After a thorough review of the record in this proceeding, the Court cannot conclude that Robins has represented Seeno. First, no express evidence of a contract or letter indicating that Robins has ever been retained for such a representation has been offered. Second, Wausau maintains that it retained Robins solely to represent the insurer. *E.g.*, Plaintiff's Declaration of Paul N. Steinlage [hereinafter Steinlage Declaration] at 3. Third, the Robins firm has apparently always contended that it represents only Wausau. *See, e.g.*, Plaintiff's Declaration of John D. Shuff, filed October 14, 1987 [hereinafter Shuff Declaration I], Exhibit B; Plaintiff's Declaration of Stuart A. Safine at 2. Fourth, Seeno itself has long objected to perceived involvement of Robins in liability matters. *See, e.g.*, Defendant's Declaration of H. Paul Breslin [hereinafter Breslin Declaration], Exhibits F, G, I. Finally, the fact that Seeno has had its own *Cumis* counsel during the period in dispute is a strong indication that Robins' representation has been solely of Wausau, and not also of Seeno, which would constitute the very joint representation that the appointment of *Cumis* counsel was meant to ameliorate.

Defendant's main argument for a finding that Robins has represented Seeno is that because 1) Seeno demanded that Wausau take over control of handling of unlitigated cases, *see, e.g.*, Breslin Declaration, Exhibit A, and 2) Robins has been involved with that claims handling, *see, e.g., id.*, Exhibit H, Robins must have been representing Seeno's interests. Although Robins concedes its involvement in liability claims handling, the firm insists that it has acted only on behalf of Wausau and its interests. As discussed above, such a representation is not improper as a matter of law. In light of the general background described above and in particular the fact that Robins and Archer have vigorously and continuously asserted their contrary positions regarding who represents whom and disputed the manner in which this very claims handling should be and has been carried out, *see, e.g., id.*, Exhibits A, F, the Court cannot infer that Robins has represented Seeno as a matter of fact. Accordingly there is no basis for disqualifying Robins, and defendant's motion is therefore denied.

## II. PLAINTIFF'S MOTION TO DISQUALIFY BECAUSE OF SEENO ATTORNEY'S PRIOR REPRESENTATION OF WAUSAU

Wausau also moves to disqualify defendant's counsel on the more conventional grounds that an attorney, Ernest B. Lageson ("Lageson"), who had previously been a partner in a firm representing Wausau, may not now represent interests directly adverse to a former client, and that because Lageson is disqualified the Archer firm in which he is now a partner must also be disqualified.

Among the ethical requirements most relevant to this motion is California Rule 4–101, which as noted above provides that:

> A member of the State Bar shall not accept employment adverse to a client or former client, without the informed and written consent of the client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client.

As the Ninth Circuit has made clear in a leading case, however, confidentiality is only one of many aspects of the attorney-client relationship protected by the ethical rules requiring disqualification of counsel that represent interests adverse to a former client:

> Both the lawyer and the client should expect that the lawyer will use every skill, expend every energy, and tap every legitimate resource in the exercise of independent professional judgment on behalf of the client and in undertaking representation on the client's behalf. That

professional commitment is not furthered, but endangered, if the possibility exists that the lawyer will change sides later in a substantially related matter. Both the fact and the appearance of total professional commitment are endangered by adverse representation in related cases. From this standpoint it matters not whether confidences were in fact imparted to the lawyer by the client. The substantial relationship between the two representations is itself sufficient to disqualify.

*Trone v. Smith,* 621 F.2d 994, 998–99 (9th Cir.1980); *see also, e.g., Cable Oakland,* 201 Cal.App.3d at 537–38, 247 Cal.Rptr. 778.

It is well established that "[t]he relevant test for disqualification is whether the former representation is 'substantially related' to the current representation." *Trone,* 621 F.2d at 998 (citations omitted); *see also, e.g., Dill v. Superior Court,* 158 Cal. App.3d 301, 304, 205 Cal.Rptr. 671 (1984) (quoting *Trone,* 621 F.2d at 998); *Global Van Lines, Inc. v. Superior Court,* 144 Cal.App.3d 483, 488, 192 Cal.Rptr. 609 (1983) (same). In applying this test, the Court must examine whether "the factual contexts of the two representations are similar or related." *Trone,* 621 F.2d at 998.

Here, it is uncontested that Lageson defended Wausau and its insureds in numerous third-party cases while he was a partner at the Bronson firm, which he left in July 1986 to become a partner in the Archer firm. Although the parties dispute the exact nature of Lageson's role in these representations and in particular what confidential information he may have received and whether he had knowledge of coverage as well as liability matters, Seeno concedes that Lageson handled Wausau liability cases personally, that he had contact with Wausau personnel regarding other liability cases being handled by Bronson, that "Wausau representatives might have considered [Lageson] the liaison between

Bronson and Wausau for liability cases," and that the Bronson firm handled coverage as well as liability matters for Wausau. Defendant's Declaration of Ernest B. Lageson, filed October 14, 1987 [hereinafter Lageson Declaration], at 2. In addition, in early May 1986 before Lageson's departure Wausau retained Bronson to handle certain Wausau matters involving Seeno policies, including the disputed "independent" investigation of many of the claims at issue in this suit.[15] *E.g.,* Plaintiff's Declaration of David E. Bland, filed September 11, 1987, at 3.

The parties dispute Lageson's present role at the Archer firm, but it is uncontested that as *Cumis* counsel he has been handling many liability cases for Wausau's insureds. Numerous billings submitted by Archer to Wausau indicate that Lageson has had considerable contact regarding Wausau matters with the attorneys in his firm who are handling this coverage action, and indeed that Lageson himself has worked on coverage issues and reviewed coverage files. Plaintiff's Declaration of Duane LaCrosse, Exhibit A. Finally, of course, Lageson's new firm is counsel of record in this action in direct opposition to Wausau.

In light of these facts alone, the Court has little difficulty in finding that Lageson's former and current representations are substantially related. First, Lageson's repeated representation of Wausau and its insureds, his position of responsibility and supervision as a partner at Bronson, and in particular his role as a liaison with Wausau make it likely that he may have received confidential information. Where a client has a long-term relationship with an attorney it is especially likely such communications will occur. *See, e.g., Global Van Lines,* 144 Cal.App.3d at 489, 192 Cal.Rptr. 609. Moreover, courts have repeatedly recognized the close relationships of insurers and their liability counsel; it was to a large extent concern over these relationships that caused the California courts to require

---

**15.** Wausau terminated this representation by Bronson in December 1986. *E.g.,* Steinlage Dec-

laration at 3, Exhibit 1.

the appointment of *Cumis* counsel. *See, e.g., Cumis,* 162 Cal.App.3d at 364 n. 3, 208 Cal.Rptr. 494 (" '[T]here has been recognition that, in reality, the insurer's attorneys may have closer ties with the insurer and a more compelling interest in protecting the insurer's position, whether or not it coincides with what is best for the insured.' " (quoting *Purdy,* 157 Cal.App.3d at 76, 203 Cal.Rptr. 524) (citation omitted)).

In the normal course of events, during his years at Bronson, Lageson would almost certainly have "had an opportunity to learn of [Wausau's] policies, practices, and procedures," and this information could easily be helpful in the present action, where the parties are disputing, inter alia, those very matters and whether they constitute bad faith. *Trone,* 621 F.2d at 1001; *see also, e.g., Global Van Lines,* 144 Cal. App.3d at 487–89, 192 Cal.Rptr. 609. As the *Trone* court put it, "[t]he ethical obligations inherent in the professional relationship between attorney and client require [the Court] to protect against any possibility that this information, if acquired, might be used against the former client." 621 F.2d at 1001. Moreover, many cases have recognized that prophylactic measures are generally necessary because even counsel proceeding in utmost good faith may unconsciously make improper use of information:

> Even the most rigorous self-discipline might not prevent a lawyer from unconsciously using or manipulating a confidence acquired in the earlier representation and transforming it to telling advantage in the subsequent litigation.... The dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case.

*E.g., Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 567 F.2d 225, 236 (2d Cir. 1977) (quoting *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562, 571 (2d Cir.

1973)); *see also, e.g., River West, Inc. v. Nickel,* 188 Cal.App.3d 1297, 1308, 234 Cal. Rptr. 33 (1987) ("[T]he 'substantial relationship' test is a strict, prophylactic rule.").

Furthermore, an attorney is ordinarily presumed to have the same knowledge as the other attorneys in his firm. *E.g., Trone,* 621 F.2d at 999 ("Confidential information possessed by one attorney may or may not have been shared with other members of the firm, but the firm as a whole is disqualified whether or not its other members were actually exposed to the information." (citations omitted)); *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.,* 607 F.2d 186, 196 (7th Cir.1979) (en banc) ("It is reasonable to presume that members of a law firm freely share their client's [sic] confidences with one another. That presumption of shared confidences underlies, either implicitly or explicitly, many of the cases requiring the disqualification of counsel. The application of the presumption recognizes ... the realities of law practice....") (cited with approval in *Bank of America National Trust and Savings Ass'n v. Summerland County Water Dist.,* 767 F.2d 544, 549 (9th Cir.1985)). Accordingly, the Court must presume that Lageson shared the knowledge of the other attorneys at Bronson prior to his departure, including those handling Wausau coverage cases and the investigation of the Seeno disputes here at issue.

Second, as discussed above, confidentiality is not the only ethical consideration when an attorney becomes involved in a representation adverse to a former client. The Court should also consider the requirements of the Model Code including Canon 9, which sets forth the duty to avoid even the appearance of professional impropriety. *E.g., Trone,* 621 F.2d at 999; *Cable Oakland,* 201 Cal.App.3d at 537–38, 247 Cal. Rptr. 778. Accordingly, the possibility of the appearance of impropriety where a lawyer changes sides also weighs in favor of disqualification.[16]

---

16. The Court is further persuaded of rather than dissuaded from this view by the four cases cited by Seeno. *Johnson v. Superior Court,* 159 Cal.

App.3d 573, 205 Cal.Rptr. 605 (1984), which involved a number of prior representations of the parties in business contexts and a chal-

Finally, because as a rule an attorney is presumed to have the same knowledge and ethical relationships as all the other attorneys in his firm, if one attorney in a firm is disqualified from a representation, all the attorneys in the firm are. *E.g., Iacono,* 722 F.2d at 442 ("This court has held that an entire law firm must be disqualified when one of its members was counsel for an adverse party in a substantially related matter." (citing *Trone,* 621 F.2d at 999)); *Klein v. Superior Court,* 198 Cal.App.3d 894, 908–14, 244 Cal.Rptr. 226 (1988) (discussing general rule of "automatic vica-

rious disqualification" and limited exceptions to it); Model Code DR 5–105(D) ("If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner or associate, or any other lawyer affiliated with him or his firm may accept or continue such employment.").

■ Ordinarily, this would be the end of the Court's analysis and disqualification of the Archer firm would be necessary, but Seeno asserts a defense based on the alleged delay of Wausau in challenging Lageson's representation of defendant.[17]

---

lenged representation of a mother in an action against her former husband for support of their developmentally disabled adult child, is easily distinguishable. In that case the court of appeal found that the several prior representations were completely unrelated primarily because 1) the subject matter was totally different; 2) any confidential financial information that the attorney may have learned about earlier was out of date because eight years had passed and more current information was a matter of public record as a result of the parties' divorce proceedings; and 3) the court was convinced that the movant was not actually concerned about being disadvantaged by the challenged representation because he had failed to object to a similar one in a similar proceeding. *Id.* at 578–80, 205 Cal.Rptr. 605. Here, on the other hand, 1) the subject matter of the representations is similar, if not identical; 2) the challenged representation immediately followed the prior representation; and 3) the movant now, though belatedly, *see* text accompanying note 17 *infra,* appears to have a genuine apprehension that it will be disadvantaged.

*Elliott v. McFarland Unified School Dist.,* 165 Cal.App.3d 562, 567, 211 Cal.Rptr. 802 (1985), a case approving a balancing test announced in *William H. Raley Co. v. Superior Court,* 149 Cal.App.3d 1042, 197 Cal.Rptr. 232 (1983), might be viewed as of more aid to defendant, at least by way of dicta. However, *Elliott* actually seems to turn chiefly on the existence of an agreement between jointly represented parties to preserve the benefits of the representation. 165 Cal.App.3d at 571–73, 211 Cal.Rptr. 802. Moreover, *Elliott* and the *Raley* balancing test have been severely criticized by subsequent court of appeal authority, and do not appear to reflect the view of the California Supreme Court. *See River West,* 188 Cal.App.3d at 1307–10, 234 Cal.Rptr. 33. *But see Klein,* 198 Cal.App. 3d at 909, 244 Cal.Rptr. 226 (apparently considering *Raley* balancing "mandate[d]," but without discussing *River West* ). In any event, a balancing of the interests in this case would not prevent disqualification.

Finally, as discussed elsewhere, both *Trone,* 621 F.2d 994, and *Global Van Lines,* 144 Cal.

App.3d 483, 192 Cal.Rptr. 609, strongly support the conclusion that the representations at issue *are* substantially related.

17. In opposition to the disqualification of Archer, Seeno raises two other arguments that merit brief discussion. First, Seeno apparently attempts to argue that Lageson falls within the "peripheral representation" standard, under which an attorney may rebut the presumption that he is disqualified by showing that he personally was not substantially involved in the matters at issue even though his law firm was. *See, e.g., Trone,* 621 F.2d at 998 n. 3; *Gas–A–Tron of Arizona v. Union Oil Co. of California,* 534 F.2d 1322 (9th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751 (2d Cir.1975). Without citing authority, Seeno apparently also intends to make the related contention that a so-called Chinese Wall was in place at Bronson or Archer which prevented transfer of any relevant confidential information or taint. *See generally, e.g., Iacono,* 722 F.2d at 442; *Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 567 F.2d 225 (2d Cir.1977); Note, *The Chinese Wall Defense to Law–Firm Disqualification,* 128 U.Pa.L.Rev. 677 (1980) [hereinafter Note, *Law–Firm Disqualification* ]. The Court is not persuaded. (Cognizant that many find the term "Chinese Wall" offensive, *e.g., Peat, Marwick, Mitchell & Co. v. Superior Court,* 200 Cal.App.3d 272, 293–94, 245 Cal.Rptr. 873 (1988) (Low, P.J., concurring), as well as that the term may be confused with a flimsy paper partition rather than the awesome Great Wall of China from which it is actually derived, *see, e.g., id.;* Webster's Third New International Dictionary 391 (1981), the Court elects to use the term "ethical wall.")

First, the peripheral representation standard is a limited exception intended to serve important interests such as avoiding unduly restricting the career mobility of public servants and young attorneys. *See, e.g., Klein,* 198 Cal. App.3d at 909, 244 Cal.Rptr. 226; *Silver Chrysler,* 518 F.2d at 754. While labels such as "asso-

*See, e.g., Piper Aircraft*, 701 F.2d at 87; *River West*, 188 Cal.App.3d at 1304, 1308–09, 234 Cal.Rptr. 33. This defense to disqualification is based on an equitable principle, which the courts typically discuss in terms of laches or waiver. *E.g., River West*, 188 Cal.App.3d at 1309, 234 Cal.Rptr. 33. Thus, " '[i]t is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right.' " *Id.* (quoting *Piper Aircraft*, 701 F.2d at 87 (citations omitted)).

Although the length of the delay in bringing a motion to disqualify is obviously important, it is not dispositive. In making the equitable determination regarding waiver, it is also appropriate to consider such factors as when the movant learned of the conflict; whether the movant was represented by counsel during the delay; why the delay occurred, and in particular whether the motion was delayed for tactical reasons; and whether disqualification would result in prejudice to the nonmoving party. *E.g., River West*, 188 Cal.App.3d at 1309–10, 1313, 234 Cal.Rptr. 33; *Piper Aircraft*, 701 F.2d at 87–88.

Turning to the facts before the Court, it is uncontested that Lageson left the Bronson firm to become a partner in the Archer firm in July 1986, well over a year before plaintiff brought its motion to disqualify in October 1987. Wausau and its counsel Robins do not dispute that they had knowledge of the asserted conflict about the time it first arose. Indeed, almost immediately upon Lageson's arrival at Archer, he was personally involved in a dispute with Wausau in state court over whether the Robins firm was entitled to attend settlement proceedings in a third-party action against Seeno. *See, e.g.,* Breslin Declaration, Exhibits G, I. Lageson also corresponded and met with Wausau and Robins personnel on numerous occasions throughout the period in question. *E.g.,* Plaintiff's Declaration of John D. Shuff, filed November 6, 1987 [hereinafter Shuff Declaration II], Exhibits 6–8; Lageson Declaration at 4–5. As noted above, Wausau was also presented with numerous bills for Lageson's services as *Cumis* counsel at the Archer firm, and Wausau paid those bills in full. Plaintiff's Declaration of Duane LaCrosse at 2, Exhibit A. Those bills clearly indicate that Lageson worked on matters adverse to Wausau. *E.g., id.,* Exhibit A at [unnumbered pages] 5, 15. Accordingly, there is no doubt that Wausau and Robins had knowledge of the alleged conflict they now assert well over a year before they moved to disqualify defendant's counsel.

Significantly, throughout the period in question, Wausau was represented by the very same counsel, Robins, that now brings this motion to disqualify. However, there is no indication in the record that Wausau or Robins made any objection on ethical grounds to Lageson's work at Archer until the motion for disqualification itself. Although Robins did object to Archer's representation of Seeno in a letter of July 11, 1986, and well over a year later asked Archer to withdraw in a letter of Septem-

---

ciate" and "partner" are not dispositive, *see, e.g., Atasi Corp. v. Seagate Technology,* 847 F.2d 826, 829–31 (Fed.Cir.1988) (applying 9th Circuit law); *Fund of Funds,* 567 F.2d at 235, Seeno clearly has not met its difficult if not impossible burden of showing that a partner of Lageson's stature, seniority, and responsibilities was not substantially involved in the cases handled by Bronson during his tenure at that firm.

Similarly, the validity of ethical-wall theory is largely an open question in California, *e.g., Klein,* 198 Cal.App.3d at 912, 244 Cal.Rptr. 226 ("Clearly, the California precedent has not rushed to accept the concept of disqualifying the attorney but not the firm, nor has it enthusiastically embarked upon erecting [ethical] walls."), and the Ninth Circuit, *Iacono,* 722 F.2d at 442; *Atasi,* 847 F.2d at 831–32, and it is anyway doubtful that even the most imposing ethical wall would suffice in a case such as this. Here, Seeno's showing falls far short. Seeno does not demonstrate that Bronson or Archer had any of the typical structural elements of an ethical wall such as physical and departmental separation of attorneys; prohibitions against and sanctions for discussions of confidential matters; rules preventing access to inappropriate files; compensation mechanisms that prevent counsel from participating in profits from walled-off matters; and continuing ethical education. *See, e.g., Iacono,* 722 F.2d at 442 n. 10; Note, *Law–Firm Disqualification,* 128 U.Pa.L. Rev. at 678, 703–15. Seeno has thus not come close to establishing these defenses.

ber 29, 1987, its stated reasons for doing so concerned Robins' belief that Archer's *Cumis* responsibilities were being discharged improperly, and did not include the conflict now alleged against Lageson. *See* Shuff Declaration I, Exhibits B, C. The first time any conflict issue was brought to the Court's attention was at oral argument regarding other matters on September 10, 1987. Again, no mention was made of any conflict because of Lageson. *See* Transcript of Hearing. Only when the motion to disqualify was finally filed, on October 14, 1987, was the propriety of Lageson's role attacked.

Plaintiff does not, however, offer any sound reason for its delay in raising objection to Lageson's work. Instead, plaintiff asserts only that it was not until summer of 1987 "that Wausau had the full picture of *Cumis* counsel's breach of duty to Wausau, and the extent of Seeno's use of *Cumis* counsel to advance its coverage position by its handling of the underlying claims." Plaintiff's Reply Memorandum in Support of Wausau's Motion to Disqualify at 11. Plaintiff thus continues to focus its attention on the *Cumis* issues already discussed, and in fact does not even address the waiver issue with respect to Lageson.

It is also undeniable that disqualification of Archer would result in considerable prejudice and hardship to Seeno. Archer has done an extensive amount of work in this action as well in as the underlying third-party cases, and any new counsel would have to spend a great deal of time becoming familiar with the many claims and issues in dispute. Similarly, it cannot be doubted that such replacement would seriously delay the handling of both the underlying claims and the present action.

On these facts, the Court concludes that plaintiff has impliedly waived any right to disqualify Archer on the basis of Lageson's work at that firm. Plaintiff's motion to disqualify on these grounds is accordingly denied.

## CONCLUSION

The parties' cross-motions to disqualify each other's counsel are denied. A status conference is hereby set for August 23, 1988, at 9:30 a.m.

IT IS SO ORDERED.