MGIC INDEMNITY CORPORATION,
Plaintiff-Appellant,

v.

Lawrence I. WEISMAN, Thomas P. Dunn,
L.N. Nevels, Jr., and Henry K.F. Kerst-
ing, Defendants-Appellees.

Nos. 85–1827, 85–2328 and 85–2792.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 13, 1986.

Decided Oct. 27, 1986.

As Amended Dec. 5, 1986.

Lisa W. Munger, Goodsill, Anderson, Quinn & Stifel, Honolulu, Hawaii, for plaintiff-appellant.

Rick J. Eichor, Rice, Lee & Wong, Joseph Schneider, Conklin, Schneider & Love, Roger S. Moseley, James T. Leavitt, John Yamane, Thomas P. Dunn, Honolulu, Hawaii, *for defendants-appellees.*

Before NELSON, WIGGINS and JOHN T. NOONAN, Jr., Circuit Judges.

NOONAN, Circuit Judge.

MGIC Indemnity Corporation (MGIC), a New York corporation, appeals the dismissal for failure to state a claim upon which relief can be granted of its suit against Lawrence I. Weisman, a citizen and resident of Maryland, and against Thomas P. Dunn, L.N. Nevels, Jr., and Henry K.F. Kersting, citizens and residents of Hawaii. MGIC also appeals the award of attorneys' fees against it. We affirm the dismissal and the award of fees. We remand for a new hearing on the fees.

■ *The Timeliness of MGIC's Appeal.* The clerk of the district court originally entered judgment dismissing MGIC's amended complaint on November 29, 1984. This judgment contained a clerical error. The clerk corrected the error, whited out the November 29 date, and entered the date of judgment on the docket sheet as December 4, 1984.

If November 29, 1984 is the true date, MGIC was untimely in filing its appeal. Its counsel admittedly had notice of a memorandum from the clerk with November 29, 1984 indicated as the date of judgment. As the record now stands, however, December 4, 1984 is the correct date. In the circumstances of this case, we think it would be harsh, overtechnical, and contrary to substantive justice to hold MGIC was bound by the earlier date. The appeal was timely taken.

*MGIC's Complaint.* On February 19, 1979 MGIC became the insurer for at least one year of directors and officers of First Savings and Loan Association of Honolulu (First Savings). On February 25, 1980 First Savings was placed in receivership. Litigation followed.

On January 16, 1980 MGIC filed a complaint against the four defendants here, essentially charging them with conspiracy to obtain money from MGIC by instigating collusive litigation against the directors of First Savings after the collapse. The complaint in Count I charged breach of fiduciary duty, breach of contract, malpractice, and fraud. Count II charged violation of RICO, 18 U.S.C. § 1962; Count III, violation of Hawaiian law; Count IV asked for punitive damages. This eight-page complaint, notably deficient in specifics, was dismissed by the district court in April 1984.

In May 1984, MGIC filed an amended complaint. For purposes of this appeal but only for such purposes we treat the allegations of the complaint as true. According to the complaint, Kersting, a shareholder of First Savings, and other shareholders had, in late February or early March 1980, engaged Weisman to recover their investment in First Savings. Weisman concluded that it would be to the advantage of the stockholders if they successfully sued the directors and thus obtained payment by MGIC of the insurance covering errors and omissions of the directors. On March 10, 1980, Weisman wrote the receiver, the Federal Savings and Loan Insurance Corporation (FSLIC), urging it to sue the directors. Later in the month Weisman arranged for letters to be sent to Dennis Alexander and Michael Provan, former directors of First Savings, notifying them that the stockholders would hold them liable and would expect their insurer to pay. On March 20, 1980, Weisman brought suit on behalf of Alexander and Provan in the federal district court. The suit was for a declaratory judgment that First Savings' insurance with MGIC was in full force and effect. The defendant was MGIC.

On June 26, 1980, as a result of further activity of Weisman and Kersting, a plaintiff named J. Ward Russell sued the directors of First Savings. He was represented by Nevels, a lawyer obtained for him by Weisman. This state suit was entitled *Russell v. Takasaki.* Weisman and

Dunn assumed the defense of the defendant directors. The suit was dismissed on March 31, 1981. Weisman billed MGIC $7,500 for his defense of the directors and was paid.

On May 4, 1981 Weisman on behalf of Kersting wrote a letter to FSLIC demanding that it bring suit against the directors of First Savings. On June 17, 1981 Weisman on behalf of First Savings sought a writ of mandamus in the federal district court to compel FSLIC to sue the directors. On August 24, 1981 Weisman wrote FSLIC a letter containing information designed to stimulate such a suit. This letter contained confidential information obtained from MGIC. By January 29, 1982 Weisman had negotiated an agreement with First Hawaiian Bank by which this bank, in return for releases from various clients of Weisman, agreed to sue the First Savings directors. The suit was brought February 24, 1982 in the state court. Weisman negotiated a similar agreement dated May 31, 1982 with FSLIC, which brought its suit on June 19, 1982 in the federal district court.

On May 10, 1982 Dunn, Weisman's associate, filed an answer for Alexander in the suit by First Hawaiian. On June 22, 1982, Dunn filed an answer in the same suit on behalf of Kersting. On July 19, 1982, Dunn filed answers for both Alexander and Kersting in the FSLIC suit. On October 20, 1982 Dunn billed MGIC for his work in defending both suits and in November 1982 Dunn received payment by MGIC in the amount of $12,413.

According to MGIC, it was not informed by Weisman and Dunn that they had instigated the suits in which they represented the defendants and were paid by MGIC.

On the basis of these facts MGIC asserted that it had suffered damages "in excess of $10,000," due to Weisman and Dunn's "breach of fiduciary duty, breach of contract and negligence." MGIC further asserted that Kersting and Nevels had aided Weisman and Dunn in their breaches of duty and contract. MGIC also claimed that the alleged facts above recited showed fraud by the four defendants. MGIC fur-

ther characterized the facts as showing a pattern of prohibited activity—mail fraud— so that the defendants were not only guilty of fraud but of violating the Racketeer Influenced Corrupt Organization Act, 18 U.S.C. § 1962, and so were liable for treble damages and attorneys' fees. MGIC also charged a tort under Hawaiian law and in addition sought punitive damages. On the basis of other alleged facts, MGIC charged Kersting alone with a pattern of tax fraud, the abetting of others in tax evasion, wire fraud, securities fraud, and the obstruction of federal justice.

■ *Analysis. The Duty of the Lawyers for the Insured.* Kersting was both a plaintiff as a shareholder and a defendant as a director in the litigation over the collapse of First Savings. Weisman and Dunn as his lawyers could ethically represent him as a plaintiff and further his interests as a plaintiff by setting out to other potential plaintiffs the advantage of litigation that would trigger the liability of the directors' insurer. When Weisman and Dunn then represented the defendants in this litigation, there was no fraud on the director defendants. Kersting and his associates knew that their lawyers were on both sides.

The suits allegedly stimulated by Weisman and Dunn did result in their own compensation. Kersting and his associates had a right as shareholders to sue and as directors to defend. They had a right to have legal representation in both capacities. Under the insurance policy, MGIC does not deny it had an obligation to pay the legal costs of the insured directors. MGIC's obligation to pay was not affected by the directors also being plaintiffs. It was apparent from the suits themselves that some shareholders were directors.

Weisman and Dunn, MGIC alleges, did not disclose to MGIC their relationship to the plaintiffs suing the directors. Was there an obligation to disclose this relation? Did MGIC rely on statements by Weisman and Dunn omitting disclosure of this relation? Did harm flow to MGIC from its

**504**

reliance on such statements? MGIC has not stated a cognizable claim unless all three questions can be answered affirmatively. The first question is a question of law, the second must be answered in terms of MGIC's complaint and such documents of which we may appropriately take judicial notice. We need not reach the third question if the second is answered negatively.

▮▮▮ When Weisman and Dunn took the defense of the suits against the directors, the directors were their clients. But it is an untenable simplification to say that they had no duty to the company they knew would pay the legal fees of the directors. A lawyer may have more than a single client in a lawsuit. A "client" is the person or entity on whose behalf a lawyer acts. Weisman and Dunn were acting for the insurer as well as for the insured. The existence of this double duty is illustrated by a simple example. Weisman and Dunn could not have simply admitted the defendant directors' liability even though it would have been to the advantage of the insured director-shareholders to lose the case. Weisman and Dunn were constrained by their duty to the insurer to actually defend.

▮▮▮ Their function defines their responsibility. They owed a duty of loyalty to the insurer as well as to the insured. That duty of loyalty included a duty of candor. A lawyer like a trustee is bound to higher standards than the morals of the marketplace. *Cf. Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545 (1928) (per Cardozo, J.). Anyone paying legal bills would want to know, and would be entitled to know, that the lawyers being paid were the very lawyers who started the suits they were now being compensated to defend. The alleged failure to disclose their activity would have been a breach of the fiduciary duty Weisman and Dunn owed MGIC.

▮▮▮ True, the policy MGIC had issued to the directors permitted them to select their own counsel, subject to MGIC's appeal. True, MGIC had "the right to associate itself in the defense." *See Okada v. MGIC Indemnity Corp.,* 795 F.2d 1450

(9th Cir.1986). But by these provisions of the policy MGIC did not bargain away its right to expect loyalty from the lawyers it was paying. Professional ethics requires of a lawyer a decent sense of responsibility to all those he serves.

▮▮▮ *MGIC's Reliance.* Did MGIC rely on statements by Weisman and Dunn in which they omitted to state their part in causing the suits to be filed? The answer to that question is not entirely clear from the complaint. The complaint makes it plain that in March 1980 MGIC knew that Weisman and Dunn were representing shareholders in the suit against MGIC itself to have the insurance policy declared to be in effect. On a motion to dismiss, we may take judicial notice of matters of public record outside the pleadings. *Mack v. South Bay Beer Distributors,* 798 F.2d 1279 (9th Cir.1986); *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.,* 245 F.2d 67, 70 (9th Cir.1956). We here take judicial notice of a motion to dismiss together with a supporting memorandum, filed in the declaratory judgment suit March 31, 1981 by John Rapp and Bruce Lamon, counsel for MGIC. This motion and the memorandum have been made part of the record in this case by MGIC.

In the memorandum, MGIC pointed to the demands "by various clients of Lawrence I. Weisman against each other." Kersting and a variety of other stockholders of First Savings were noted as clients of Weisman. MGIC also pointed out that on January 16, 1981 Weisman, appearing for First Savings and Provan, had filed a motion to amend a complaint in the federal district court seeking damages from FSLIC for failing to sue the directors of First Savings. MGIC continued, "The apparent motive for these machinations relates to the alleged existence of $1,000,000 in directors' and officers' liability insurance with defendant MGIC Indemnity Corporation."

▮▮▮ This memorandum dispels any doubt: MGIC was fully aware of Weisman's double role. Dunn was merely Weisman's agent and had no separate part.

There was no reliance by MGIC on any statements by Weisman and Dunn. MGIC knew exactly whom they represented. MGIC cannot maintain that the knowledge it and its counsel Rapp had in 1981 was forgotten by 1982. Deeply involved in the First Savings litigation, MGIC is bound by the knowledge admitted by its counsel. The allegedly confidential information conveyed by Weisman to FSLIC is not alleged to have had any causal impact on FSLIC's decision, almost a year later, to sue the directors.

As for Kersting and Nevel, neither one of them is alleged at any time to have owed any duty to MGIC. They are dragged into MGIC's amended complaint as abettors of Weisman and Dunn. The complaint fails to state any separate basis on which they would be liable to MGIC. They have been put to much trouble and expense because MGIC appears to have harbored the vague suspicion that Kersting was the mastermind and Nevel was his choice. When MGIC's case against Weisman and Dunn disappears, so does its case against Kersting and Nevel.

*Attorneys' Fees.* As to all four defendants in this suit, MGIC made very serious charges of mail fraud and racketeering without foundation. MGIC failed to state a case against the defendants for breach of duty when it could not state reliance. Its further allegations inflated an alleged breach of professional duty into conduct that would have had to have been criminal for MGIC to have prevailed. These allegations could not have been believed to be "well grounded in fact" and "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." F.R.C.P. 11.

Special attention must be given to Count V. The connection between the many crimes charged to Kersting by MGIC and any damage to MGIC is not evident. How, for example, did Kersting's alleged tax evasion or securities fraud wrong MGIC? A complaint filed in federal court is not a vehicle for airing rumor, suspicion, or mere hostility. Without connection made between its allegations against Kersting and its own injury, MGIC was engaging in scurrilous speculation.

Attorneys' fees were rightly imposed by the district court for the filing of the amended complaint.

*Determination of the Fees.* The district court awarded the fees, amounting to $80,881, after it had received the defendants' lawyers' timesheets in camera. No reason appears why the timesheets should not have been made available to MGIC and MGIC given the opportunity to challenge them. We remand for the sole purpose of a hearing in which MGIC may challenge the reasonableness of the fees awarded. The court may withhold from MGIC any information it finds protected by the lawyer-client privilege.

*MGIC's Rule 59 Motion.* The defendants on December 4, 1984 moved for attorneys' fees and costs. MGIC on December 13, 1984 moved to alter or amend the judgment under Fed.R.Civ.P. 59(e). The district court denied MGIC's motion, ruled that it was frivolous, and awarded the defendants $4,554 in attorneys' fees against John Rapp, MGIC's counsel.

The district court found the Rule 59 motion untimely because that court adopted the November 29, 1984 date as the date of judgment. But apart from untimeliness, the court found the motion frivolous because it introduced nothing new. Rapp, the district court declared, "had wasted the time of court and counsel." The district court was not plainly wrong in this finding and the district court did not abuse its discretion in making this award.

Attorneys' fees on this appeal are not warranted.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.