NOONAN, Circuit Judge,
concurring:
Sandra L. Stolrow (“Sandra”) and the Woodland Hills law firm of Corinblit, Shapero, and Seltzer (Corinblit) appeal from the denial of their claims in bankruptcy against the debtor, Stolrow’s Inc., dba Clothes for Eve (“Stolrow’s”). The bankruptcy judge found no consideration in *998 what they contend was a binding contract by Stolrow’s to pay Sandra’s fees for the services of Corinblit. The Bankruptcy Appellate Panel affirmed the rejection of their claims. The case is one of elementary contract law and interpretation of a contract. It also affords occasion to consider the nature of the relationship when a lawyer is paid by one party and is providing legal services directly to another.
Stolrow’s is a retailer of women’s clothes in the Los Angeles area. Its stockholders are Walter Stolrow (“Walter”); his son Gregory; his wife Margaret; and Sandra, his daughter by a previous marriage. In January 1983 friction developed between Sandra and her stepmother, leading to Sandra’s declaration that she did not want to be associated in business with either her stepmother or Walter. Sandra proposed that she buy them out. Her father was not unreceptive to the idea if the price was right. They both understood that she would not want to rely on regular corporate counsel in working out the details and that Walter would be getting advice from him, paid for by the corporation. Speaking for Stolrow’s, Walter offered to pay for Sandra’s independent counsel in the negotiation of a deal. Sandra considered several firms and chose Corinblit, recommended by her father as reliable on the basis of earlier work it had done for the company. After she had made the choice, her father, as he puts it, “confirmed” to Martin Shapero, a Corinblit partner, that Stolrow’s “would pay for Sandra’s legal fees incurred in her attempt to buy the businesses from me and other shareholders.”
Between January and July 1983 Corinblit did approximately 15 hours of work on the negotiations, presented a bill to Sandra of $2,593, and was paid by Stolrow’s. On October 4, Corinblit submitted to Stolrow’s a proposal by Sandra to sell her one-third interest in the corporation for $933,500. The proposal signaled a worsening in the business relations within the family. On October 26, without responding to the sellout proposal, Walter notified Sandra that her employment with Stolrow’s would end in two months. The next day, October 27, Corinblit began to draft for Sandra a complaint seeking the dissolution of Stolrow’s under the provisions of California law permitting the owner of a third- or greater interest to obtain involuntary dissolution if there is abuse of its power by the majority. California Corporation Code, § 1800 et seq. The complaint was filed by Sandra in the state court on November 14,1983. She sought dissolution and also damages from Stolrow’s and Walter.
In late October Walter informed Sandra, as she testifies, that Stolrow’s would not make “further payments” to Corinblit. During October, November and December 1983, Martin Shapero of Corinblit billed 83 hours in connection with Sandra’s suit against Stolrow’s. The next Corinblit bill submitted to Stolrow’s went unpaid.
Sandra’s attack on the legal existence of Stolrow’s was stayed by her while from December 1983 to April 1984 she negotiated further with Walter. Finally on April 16, 1984 she caused the state-appointed receiver to file the bond qualifying him to take control of the business. The following business day Stolrow’s entered bankruptcy proceedings under Chapter 11. In January, February, March and up to April 16,1984, Martin Shapero billed 122 hours in connection with his work for Sandra re Stolrow’s.
After the bankruptcy filing, Walter pursued negotiations to sell the business to an outside party, and an agreement to sell was drafted but not consummated. Corinblit on behalf of Sandra participated in these negotiations. Corinblit also represented Sandra’s interests and their own in the bankruptcy court. Post-April 17, 1984, Martin Shapero billed 154 hours. Corinblit’s total bill, including 246 hours spent by Steven J. Shapero not broken down by period, is $80,-453.
The bankruptcy court found that no consideration had been given by Sandra to create a binding contract with Stolrow’s that it pay her fees. Consideration given by Sandra is indeed difficult to discover. She was ready and anxious to buy out the family. Her entry into negotiations was not consideration. She must be supposed *999 to have acted in good faith. Good faith by itself cannot be consideration. She freely chose Corinblit. Her exercise of choice cannot be consideration. Her non-objection to payment by Stolrow’s of others’ attorney’s fees was neither bargained for nor promised, although perhaps implicit in Walter’s offer; it cannot be determined exactly what right she relinquished or how definitely she relinquished it. It is too tenuous an undertaking to tease into the shape of bargained-for consideration. Sandra did not even tender a peppercorn for her father’s “agreement.”
A contract nonetheless was made between Stolrow’s and Corinblit. Walter on behalf on Stolrow’s agreed to pay Sandra’s fees. Corinblit accepted this offer and in reliance on it performed work. Its services were consideration. Walter’s offer was met by its response in its professional advice to Sandra.
Our question then becomes the interpretation of the Stolrow-Corinblit contract. It was a contract for Sandra’s benefit but also for Stolrow’s. Stolrow’s thought Corinblit’s legal work would be of benefit to Stolrow’s. Of course there was the potential of conflict between the two. There often is when one pays and the other gets the advice. But no conflict was inevitable. Sandra was the firm’s primary client in the sense that she was the person to whom the firm was engaged to give legal advice. But Corinblit was not without a relationship and a duty to the company paying for its services. Cf. MGIC v. Weisman, 803 F.2d 500, 504 (9th Cir.1986). As long as Sandra’s interest were not in conflict with Stolrow’s, Cornblit could properly serve them both.
When conflict did break out in October 1983, Corinblit chose to stay with Sandra. But, as a choice had to be made, the firm also relinquished its duties to Stolrow and by its choice ended the contract to be paid by it; and Walter, just as he had “confirmed” the contract in January 1983, confirmed its termination in October 1983.