**ALLFAST FASTENING SYSTEMS,**
Plaintiff,

v.

**BRILES RIVET CORP. and Franklin Briles, Defendants.**

**No. CV–97–8190 LGB (RCX).**

United States District Court,
C.D. California.

May 11, 1998.

Ronald W. Reagin, Dennis G. Martin, Willmore, Frederick, Holbrow, III, Blakely, Sokoloff, Taylor & Zafman, Los Angeles, CA, for Plaintiff.

Marvin Jubas, Laurence L. Hummer, Freeman, Freeman & Smiley, Leslie E. Wallis, Lewis, Fisher, Henderson & Claxton, Los Angeles, CA, for Defendants.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' RULE 56(f) MOTION

BAIRD, District Judge.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff's motion for summary judgment came on regularly for hearing on April 7, 1998. Upon careful consideration of the papers submitted and oral argument of counsel, the Court hereby GRANTS plaintiff's motion. The Court also DENIES defendants' Rule 56(f) motion.

This case arises from a dispute between two rivet manufacturers, one of whom holds a patent. On November 7, 1997, plaintiff Allfast Fastening Systems ("Allfast") filed the currently-operative First Amended Complaint ("1AC"). The 1AC seeks declaratory judgment of (1) patent invalidity and unenforceability and (2) trademark invalidity and unenforceability against defendants Briles Rivet Corporation and Franklin Briles (collectively "Briles"). On March 31, 1998, the parties filed a Stipulation dismissing plaintiff's first claim for relief (patent invalidity). Currently before this Court is Allfast's motion for summary judgment, solely as to the second claim.

Allfast's motion as to trade dress is brought on the grounds that the rivet configuration for which Briles seeks trade dress protection is functional. Allfast seeks a permanent injunction barring enforcement efforts in protection of the trade dress.

Plaintiff's motion for summary judgment was filed December 16, 1997. Defendants' Opposition was filed January 26, 1998. Plaintiff's Reply was filed February 2, 1998. On February 9, 1998, Senior Judge Hauk declined to entertain the motion and the case was reassigned to this Court on February 10, 1998.

Defendants' Opposition includes a motion for continuance under Rule 56(f). (Def.'s Opp. 28:12–33:18). However, the Stipulation filed March 31, 1998 stated that "the motion for summary judgment to the extent it relates to the second count remains on calendar."

At oral argument on April 7, 1998, counsel for defendant Briles reiterated its motion for continuance pursuant to Fed.R.Civ.P. 56(f) ("Rule 56(f)"). On April 8, 1998, this Court issued a Minute Order granting defendant leave to file a Rule 56(f) motion in conformity with the Federal Rules. On April 15, 1998, defendant Briles did so. Plaintiff's Opposition was filed April 20, 1998. Defendants' Reply was filed April 24, 1998.

## II. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment shall be granted if the evidence supporting the motion for summary

judgment shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party moving for summary judgment may carry its initial burden by pointing out to the district court that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. If the non-moving party bears the burden of proof at trial, the moving party may carry its burden by showing an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

To avoid summary judgment, the non-movant must set forth specific facts showing that there remains a genuine issue of material fact for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading." A factual dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Id.* at 255, 106 S.Ct. 2505. If the nonmoving party's evidence is merely colorable or is not significantly probative, then summary judgment may be granted. *Id.* at 249–50, 106 S.Ct. 2505.

## III. FACTUAL BACKGROUND

The following facts are relevant to the trade dress issue and undisputed, except as noted: [1]

Defendant Briles claims trade dress protection for the appearance of a rivet Briles manufactures, specifically, a "toroidal [2] headed rivet configuration." (1AC, Exh. B p. 23.) The rivet head at issue is part of what is known as a "flush" rivet, meaning that once installed, the rivet head does not protrude excessively above the surface of the metal sheets joined by the rivet. (Aurentz Decl. ¶ 7–8.)

The specific rivet head configuration at issue is shown on three patents held by Briles, the '521, '592, and '771 patents. (Allfast's Fact 29, sentence 1.) [3] This configuration is part of the claims of the three patents. (Allfast's Fact 29.) The now-expired '592 patent claims "the rivet head having an end face defining a ring-shaped dome extending about the rivet axis" followed by steps involving that rivet head and rendering it "flush" with the work surface (Luhm Decl., Exh 4, '592 patent, Claims 1 and 5, Col.7, 1.8–Col.8, 1.24.) The '592 patent explains that "the use of the ring-dome assures that no gap will be produced" when the rivet is set. (Luhm Decl., Exh. 4, '592 patent, Col. 5, 1.51–52.) The '521 patent explains how "the ring dome crest" affects the performance of

---

**1.** The Court is in receipt of Defendants' Objections to Evidence Submitted by Plaintiff, filed January 26, 1998. Because the evidence objected to has not been relied upon by the Court in determining this motion, the Objections have not been ruled upon. The Court is also in receipt of Defendants' Objections and Motion to Strike Supplemental Evidence Submitted by Plaintiff, filed March 9, 1998. The Court has not relied upon the evidence objected to in the Supplemental Declaration of Martin in determining this motion, and the Court therefore does not determine the Objections to Martin's Supp. Decl. Nor has the Court relied upon footnote 11 in Allfast's Reply Brief (to which defendant objects) in determining this motion, and the Court also declines to determine that objection. Defendant objects

to the Luhm Supp. Decl. ¶ 9:20–22, ¶ 11:12–17, ¶ 13:8–10, ¶ 15:16–18, ¶ 18:17–19, ¶ 21:13–28, ¶ 22:2–15. These passages of the Luhm Supp. Decl. deal exclusively with the patent and therefore will not be determined.

**2.** "Toroidal" is defined as "having a surface generated by a closed curve rotating about, but not intersecting or containing, an axis in its own plane." The Patent and Trademark Office referred to this shape as a "ring dome," and this Court will do the same. (1AC, Exh. C at 30.)

**3.** Although Briles disputes other statements made in Allfast's Fact 29 (Briles' Disputed Facts 16:24), this statement is not disputed.

the rivet. (Luhm Decl., Exh. 1, '521 patent, Col.2, 1.60–67.)

Briles has threatened to sue Allfast for trademark infringement should Allfast manufacture a rivet exhibiting this configuration. (Randall Decl. ¶ 6.)

Twenty-six Boeing aircraft, of the 750 aircraft manufactured by all manufacturers, use this rivet. (Def.'s Disputed Facts 17:22–26.) The Boeing Part Standard (the "Standard") for the BACR15FV rivet lists only "Briles Rivet Corp" under "Procurement." After listing Briles' name, the Standard states, "The manufacturers listed and their authorized distributors are the only approved sources for the above qualified products....Manufacturers of competitive products may apply to a Materiel Department of the Boeing Company for qualification." (Luhm Supp. Decl. ¶ 4, Exh. 19 at 299.)[4]

The Standard requires the ring-domed head rivet, for which Briles is currently the only approved supplier. (Luhm Supp. Decl. ¶ 4, Exh. 19 at 299.) This is not the typical situation, in which Boeing or another aircraft manufacturer would approve a single design and multiple sources for that design. (Luhm Supp. Decl. ¶ 4–5.)[5] The cost of submitting a different design would be costly and time-consuming for Boeing and the would-be supplier, and thus would not be cost-efficient for Boeing. (Luhm Supp. Decl. ¶ 4–5.)[6]

■ Briles applied for trademark registration for the rivet head. On December 10, 1996, the Patent and Trademark Office issued a final "functionality refusal" of the "ring dome" rivet head configuration, setting out its reasoning in some detail. It is therefore worthwhile to include it here almost in its entirety:

> The examining attorney refused registration... because the proposed mark appears to be functional. That is, the proposed mark consists of a design feature of the identified goods which serves a utilitarian purpose. [citations omitted]

> A mark may be functional in two senses. If the proposed mark embodies a design feature of the goods which is superior to other available designs and thus provides a competitive advantage to the user, then the proposed mark is *de jure* functional and unregistrable... [citation omitted] Or, as another Court has characterized the test, if the underlying design is one which would be costly to do without, then the proposed mark is *de jure* functional.

> The examining attorney asserts, based on the patents provided by applicant, that the proposed mark is *de jure* functional. The proposed mark consists of a configuration of a toroidal head of a rivet. The head of the rivet is round and ringed to slope into its center (hereinafter, the "ring dome.")[7] The users of the applicant's products seek to avoid both protrusion of the rivet head from the work surface, and gaps between the rivet head and the work surface after installation. In particular, the gaps present a concern because "fluids can and do enter the gap or clearance to cause corrosion of the connection over a period of time, creating a dangerous weakening of the connection" [from Briles' '771 patent].[8] Because the applicant's rivet is angled, no gap exists between the rivet head and the work surface. The proposed mark therefore performs a function.

---

4. Defendants have not objected to the portion of ¶ 4 which identifies Exhibit 19, the Standard. Defendants' objection for lack of foundation as to Luhm Supp. Decl. ¶ 4:10–17, 21–26, as the foundation is provided in Luhm Decl. ¶ 3.

5. Defendant Briles has objected to certain portions of Supp. Luhm Decl. ¶ 4–5. Although defendant states a "laundry list" of bases for objection, the substance of the objection is lack of foundation. On the basis that the original Luhm Decl. ¶ 3 (filed December 16, 1997) provides adequate foundation, the objection is OVERRULED.

6. See note 6 supra.

7. In Briles' Statement of Disputed Facts 16:27, Briles refers to this as "the annular ring dome." As "annular" simply means "shaped like or forming a ring" (Webster's New Riverside University Dictionary at 111), an "annular ring" is a pleonasm, and the Court instead will follow the PTO and refer to it simply as a "ring dome."

8. The specific rivet head configuration at issue is shown on three patents held by Briles, the '521, '592, and '771 patents. (Allfast's Fact 29, sentence 1.)

[Patent '771], owned by applicant, features the design of the rivet head for which the applicant is currently seeking trademark protection. The ring dome is specifically identified, and its utilitarianism is protected under the patent. The patent description refers to the specific angles of the dome which serve the "best results." As described in the ['771] patent, the proposed mark serves the purpose of expanding outwardly when installed. In this manner, the rivet head is flattened and becomes flush with the work surface. Moreover, the material from the ring serves to seal the rivet to the work surface: "...the head metal is constantly forcibly urged toward that countersink to prevent development of clearances" ['771 patent]. Thus, the proposed mark serves a utilitarian purpose by expanding into the gap and flattening against the work surface.

It is well settled that the functional aspects of an item are to be protected under patent law not trademark law. Rights associated with these functional shapes stem from patent law not trademark law. "The reason is clear. If a configuration is functional... then everyone has the right to use the configuration for its functional purpose, subject only to such exclusive right for a limited time as may exist under the patent laws." [citation omitted]

Furthermore, if the same party applies for the patent as well as the trademark, the applicant should be precluded from arguing functional advantages in order to obtain the patent and arguing non-functionality in order to obtain a federal trademark. The applicant can not be permitted to obtain a utility patent and a trademark for the same product or features of a product. The two concepts are mutually exclusive.

The applicant has exclusive right to the utility of the ring dome through the owner-

ship of its patent. Thus, the applicant may not also receive trademark protection for this feature.

(1AC, Exh. C at 29–31, hereafter "Final Refusal".)[9] Briles has appealed this refusal. (Martin Decl. Exh. 18.)

## IV.  ANALYSIS

Plaintiff argues that defendant Briles cannot enjoy trademark protection for the features of the rivet covered by the '521 patent, on the basis that those features are functional.

### A.  Applicable Legal Standards

Section § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), "False designations of origin and false descriptions forbidden," states, in pertinent part,

(1) Any person who, on or in connection with any good or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion or to cause mistake ... as to the origin, sponsorship, or approval of his or her goods ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The analysis for trade dress and an *unregistered* trademark under § 43(a) of the Lanham Act is very similar. *International Jensen v. Metrosound U.S.A.*, 4 F.3d 819, 823 (9th Cir.1993) (emphasis in original). " 'Trade dress' refers to the 'total image of a product' and may include features such as size, shape, color, color combinations, texture, or graphics." *Id.* at 822. A seller's adoption of a trade dress confusingly similar to a competitor's constitutes unfair competition that is actionable under § 43(a). *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609,

---

9.  The court may take judicial notice of matters of public record outside the pleadings. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500 (9th Cir. 1986). The court may properly consider orders in other actions, and records and reports of administrative bodies. *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir.1986).

A judicially noticed fact must be one not subject to reasonable dispute in that it is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2). A court may take judicial notice, whether requested or not. Fed. R. Evid. 201(c).

613 (9th Cir.1989). Trade dress protection is broader than trademark protection, in part because it requires the court to focus on the plaintiff's entire selling image. *Id.*

■ The elements of a claim for trade dress infringement relating to the appearance of a product are: (1) the claimed dress is not functional; (2) the trade dress is inherently distinctive or has acquired secondary meaning; and (3) there is a likelihood of confusion on the part of the consuming public between the plaintiff's product and the Defendants' product. *International Jensen,* 4 F.3d at 823. In the Ninth Circuit, the burden of proof is on the party seeking protection of the trademark laws to prove non-functionality. *Clamp Mfg. Co. v. Enco Mfg. Co.,* 870 F.2d 512, 516 (9th Cir.1989), citing *Rachel v. Banana Republic, Inc.,* 831 F.2d 1503, 1506 and note 2 (9th Cir.1987).

■ It is well settled that functional elements cannot serve as trade dress. *Vornado Air Circulation Systems v. Duracraft Corp.,* 58 F.3d 1498, 1510 (10th Cir.1995) (concluding that trade dress protection was not available for appearance of patented fan grill design, and holding that "where a disputed product configuration is part of a claim in a utility patent, and the configuration is a described, significant inventive aspect of the invention...so that without it the invention could not fairly be said to be the same invention, patent law prevents its protection as trade dress, even if the configuration is non-functional"), *cert. denied,* 516 U.S. 1067, 116 S.Ct. 753, 133 L.Ed.2d 700 (1996); 1 J. Thomas McCarthy, *McCarthy on Trade-marks and Unfair Competition* § 7:89, at 7–203 (4th ed. 1996) ("[O]ne cannot argue that a shape is functionally advantageous in order to obtain a utility patent and later assert that the same shape is non-functional in order to obtain trademark protection. Functional patent protection and trademark protection are mutually exclusive.").

In *Qualitex Co. v. Jacobson Products Co.,* 514 U.S. 159, 164, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995), the Supreme Court stated,

> The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature. It is the province of patent law, not trademark law, to encourage invention by granting inventors a monopoly over new product designs or functions for a limited time, after which competitors are free to use the innovation. If a product's functional features could be used as trademarks, however, a monopoly over such features could be obtained without regard to whether they qualify as patents and could be extended forever (because trademarks may be renewed in perpetuity).[10]

■ The physical details and design of a product may be protected under the trademark laws only if they are nonfunctional and have acquired a secondary meaning.[11] *Clamp Mfg. Co. v. Enco Mfg. Co.,* 870 F.2d 512, 515 (9th Cir.1989).

---

**10.** *Accord,* McCarthy, supra, § 7:89 at 7–205. The *Vornado* court expressed a similar justification for its holding: "[Prohibiting trademark and trade dress protection of functional patent elements] avoids potential problem scenarios in which a commercially unimportant but patented configuration is deemed nonfunctional and registered as a trademark, and then later, because of a change in the direction of research and development, inventors wish to use the old technology taught by the expired patent but cannot, because of the trademark." *Vornado,* 58 F.3d at 1510, note 20.

**11.** Secondary meaning is not at issue in this motion. The trademark Examiner stated "should the applicant overcome the functionality refusal, the evidence of acquired distinctiveness is sufficient." (1AC, Exh. C at 29.) Plaintiffs concede that the ring dome design is known as "the Briles rivet" (Luhm Decl. ¶ 11, Supp. Decl. ¶ 7). Thus, neither Briles' admissible evidence that "[d]istinctive shapes on rivet heads have a very important purpose in serving to identify the manufacturer" (Aurentz Decl. ¶ 17), nor plaintiff's evidence stating the contrary (Luhm Supp. Decl. ¶ 5), are relevant to the determination of this motion. Defendant objected to Luhm Supp. Decl. ¶ 5:4–15, 17–18 on the basis of lack of foundation and inadmissible opinion testimony. Defendants' objection is OVERRULED as the original Luhm Decl. ¶ 3 provides foundation for the statements.

A product feature is functional[12] if it is essential to the product's use or if it affects the quality of the article. *Qualitex,* 514 U.S. at 165, 115 S.Ct. 1300; *International Jensen,* 4 F.3d at 823; *Fuddruckers, Inc. v. Doc's B.R. Others,* 826 F.2d 837 (9th Cir. 1987). "Functional features of a product are features which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product." *Clamp Mfg. Co. v. Enco Mfg. Co.,* 870 F.2d 512, 516 (9th Cir.1989) (internal quotation marks and citations omitted). An element may be deemed functional and not protectable where permitting that element to be trademarked would be anti-competitive by depleting alternatives or otherwise putting competitors at "a significant non-reputation-related disadvantage." *Qualitex,* 514 U.S. at 165, 115 S.Ct. 1300; *Clamp,* 870 F.2d at 516.[13]

Several factors indicate functionality: (1) the existence of an expired utility patent disclosing the utilitarian advantage of the design sought to be protected as a trademark; (2) the extent of advertising touting the utilitarian advantages of the design; (3) the availability of alternative designs; and (4) whether a particular design results from a comparatively simple or cheap method of manufacture. *Clamp,* 870 F.2d at 516. The third of these has been emphasized. The existence of actual or potential alternative designs that work equally well strongly suggests that the particular design used is neither functional nor needed by competitors to effectively compete. *McCarthy on Trademarks,* § 7.26[3][e][ii].

In *Clamp,* supra, the Ninth Circuit affirmed the district court's determination that a C-clamp's configuration was non-functional, although an expired utility patent existed and the advertising done by the party seeking trademark protection "heavily, if not exclusively, touted the utilitarian aspects of its product." *Id.* The district court found non-functionality on the basis of evidence of hypothetical and actual alternative designs; and evidence of the "arbitrary" nature of the product's shape. The Ninth Circuit held that the party seeking trademark protection had presented sufficient evidence to sustain the district court's finding under a clearly erroneous standard, although it held that the issue was "close." *Clamp,* 870 F.2d at 517.

## B. Discussion

This discussion will follow the functionality test laid down in *Clamp,* supra. However, as neither party has addressed the fourth part of *Clamp*'s four part test ("whether the particular design results from a comparatively simple or cheap method of manufacturing"), only the first three factors will be evaluated.

### 1. Utility patents

The existence of utility patents covering a feature favors a determination that such a feature is functional, under *Clamp,* supra.[14] It is undisputed that the ring dome rivet head configuration is not only part of certain expired utility patents, but is also part of an

---

12. As defendant Briles points out, the Patent and Trademark Office distinguishes between features which are "merely *de facto* functional," and may be registered as trademarks with a satisfactory showing of inherent or acquired distinctiveness, and features which are "*de jure* functional" and thus not registrable. U.S. Trademark Office Manual of Examining Procedure, § 1202.03(a)(I). In the cases cited here and in this memorandum, "functional" means "*de jure* functional" unless stated otherwise.

13. As it is controlling Ninth Circuit authority, this Court relies on *Clamp* for the definition of functionality. Specifically, the functionality of a configuration is shown when that configuration is an "actual benefit" to the buyer, and when its absence from a competitor's product puts the competitor at a non-reputation-related disadvantage. *Clamp,* supra. To the extent that *Brunswick Corp. v. Spirit Reel Co.,* 832 F.2d 513, 518 (10th Cir.1987), cited by defendant, states a different or higher standard for the role of commercial significance in determining the functionality of the feature in question ("one that competitors would find *necessary* to incorporate into their product in order to compete effectively") (emphasis added), this Court does not and may not follow *Brunswick.*

14. Even expired utility patents have this significance under *Clamp,* supra. Therefore, although the parties have not informed the Court how the patent issues in this case have been settled, even should the '771 patent be invalidated, the Court's analysis herein would be unaffected.

existing utility patent, the '771 patent. Defendant Briles argues that the existence of a utility patent is not dispositive of the issue of functionality. Briles cites *Dogloo, Inc. v. Doskocil Mfg. Co., Inc.,* 893 F.Supp. 911 (C.D.Ca.1995) in support. In *Dogloo,* the district court distinguished between a configuration disclosed in a patent which is "really primarily functional" and one which "incidentally appears" or "happen[s] to be described or pictured as an incidental detail." *Dogloo,* 893 F.Supp. at 919. As set out above in the trademark examiner's Final Refusal, the role of the ring dome rivet head is not an "incidental" feature of the '771 patent. The function performed by the ring dome rivet head in preventing undesirable "gaps" and "clearances" between the rivet and the surfaces being riveted together is set out in detail. A rivet head of this shape is therefore "primarily functional" under *Dogloo.* A rivet which performs in this way is the "actual benefit" sought by the customer, supporting its functionality under *Clamp,* supra.[15]

Defendant Briles also relies on *Clamp,* supra, in which the Ninth Circuit affirmed the district court's finding of non-functionality despite the existence of an expired utility patent including the product configuration. Defendant argues that "this case is not as close as *Clamp*" (Def.'s Opp. 25:24), on the basis that the rivet head is "not covered by a separate claim but instead is merely a part of one element" (Def.'s Opp. 25:25–27). Defendant presents no caselaw or other authority for the proposition that a feature which is not covered by a separate claim is therefore less functional than one which is covered by a separate claim, and this Court is aware of none.

The existence of both expired and unexpired utility patents covering the feature in question therefore is a factor supporting a finding of functionality.

## 2. Advertising

The extent of advertising touting the utilitarian advantages of the design is a second factor to be considered in determining functionality under *Clamp,* supra. Allfast has presented uncontroverted admissible evidence that Briles advertises the utilitarian advantages of the ring dome headed rivet. (Luhm Decl. Exh. 22 [incorrectly cited by in Allfast's Reply 11:16–17 as Exh. "42–43"].) Although it is not clear how widely disseminated this information is, its existence is another factor favoring functionality under *Clamp,* supra.

## 3. Availability of Alternative Designs

The availability of alternative designs is the third factor in the functionality analysis under *Clamp,* supra, and arguably the most important. The existence of actual or potential alternative designs that work equally well strongly suggests that the particular design used is neither functional nor needed by competitors to effectively compete. *McCarthy on Trademarks,* § 7.26[3][e][ii].

Defendant Briles argues that more alternative designs have been presented in this case than in *Clamp* itself, where this factor loomed large. Briles has presented admissible evidence that the Briles rivet's ring dome functionality can be accomplished by other flush rivet designs, including Allfast's "Alltite" rivet (Aurentz Decl. ¶ 11); Ateliers Haute Garonne's Matt Rivet (Aurentz Decl. ¶ 12); Aerospace Rivet Corp.'s "Aerolite" rivet (Aurentz Decl. ¶ 13); and McDonnell Douglas's Crown Flush rivet (Aurentz Decl.

---

**15.** Defendant cites *Cable Electric Products, Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1030–31 (Fed.Cir. 1985), for the proposition that "It is clear error to determine the issue of functionality based solely on the existence of a utility patent without consideration of the actual evidence that has a bearing on functionality." (Def.'s Opp. 26:24–27.) This is not the holding of *Cable Electric.* In *Cable Electric,* the plaintiff alleged that Defendants' device was an impermissible copy under § 43. The Federal Circuit reversed the district court's finding that the product configuration was functional, which had been based on the fact that the plaintiff was a patent holder for the device, because the district court did not "verify" or "consider" whether the item allegedly copied even conformed to the patent, and did not verify or consider whether the design details of the product allegedly copied were even found in the patent claims. This case is distinguishable. In this case, defendant Briles, who bears the burden of proof of non-functionality, has not presented evidence or argument to suggest that the Briles rivets do not conform to the patent. *Cable Electric* is therefore irrelevant.

¶ 14). Defendant argues that these rivets are used in "more than 720 of the 750 aircraft manufactured, since only 26 of them use the [ring dome rivet]." (Def.'s Disputed Facts 17:21–25.) On this basis, Briles argues that the ring dome rivet head is "*de facto* functional," rather than "*de jure* functional"; that is, it is a feature "directed to the performance of a function" but not one which "provides a competitive advantage to the user." (Def.'s Opp. 27:11–24.)

Plaintiff argues, however, that the relevant commercial analysis is sale to Boeing for use in the 26 Boeing planes which employ the BACR15FV rivet exclusively. (Pl.'s Reply 10:23–11:2.) Plaintiff's uncontroverted evidence is that this is "a very large volume of rivets." (Luhm Supp. Decl. ¶ 4.) [16] The evidence demonstrates that other rivets exist, which may even work as well as the ring domed headed rivet, but Boeing does not purchase them for the twenty-six planes covered by the BACR15FV specification. Plaintiff has presented admissible evidence that the process of qualifying an alternate *design* is costly and burdensome, and Boeing would have no reason to do so. While permitting other manufacturers to produce rivets of the *same* (ring dome headed) design—the result should trademark protection be denied to Briles—would bring procurement of this part into conformity with industry practice. (Luhm Supp. Decl. ¶ 4; Aurentz Decl. ¶ 18.) Other manufacturers who manufactured a rivet in conformity with the BACR15FV Standard would require qualification as alternate *manufacturers*, but would not need to qualify an alternate *design*, in order to sell to Boeing under the BACR15FV Standard.

Despite Defendants' evidence, therefore, there is no remaining genuine issue of material fact as to the "significant non-reputation-related disadvantage" to which all other rivet manufacturers will suffer if the ring dome headed rivet is given trademark protection: all other competitors will be shut out of the BACR15FV market completely, and potentially in perpetuity. This is precisely what is forbidden by *Qualitex*, supra.

Defendant also argues that plaintiff's own evidence shows that the ring dome head is not superior, on the basis that the '234 patent, owned by plaintiff, "states unequivocally that its rivet construction is superior to that of Briles," and cites to the '234 patent, Col.2, 1.10 to Col.3, 1.15 (Luhm Decl. Exh 2). The cited portion of the '234 patent comes from the "Background of the Invention," and describes certain problems with rivets disclosed by, *inter alia*, the '592 patent owned by Briles. These problems arise from the fact that the ring domed rivets work best only when the holes into which they are set are within specification tolerances, something which, because of the way the ring domed rivet head spreads, cannot be determined once the rivet has been set. The '234 patent identifies as one of its goals to allow inspection after setting.

Even if the Court accepted Briles' characterization of this discussion in the '234 patent "Background" as an "unequivocal statement that [Allfast's] rivet construction is superior to that of Briles," in the light of the evidence that only Briles can currently supply the BACR15FV rivet, Briles' conclusion that "Clearly, therefore, there is no need to copy Defendants' configuration of its rivet head in order to compete effectively" is both disingenuous and a *non sequitur*. The competition-enhancing goals of patent and trademark law discussed above in McCarthy, supra, § 7:89 at 7–205, *Vornado*, 58 F.3d at 1510, note 20, and *Clamp*, 870 F.2d at 516, do not merely require the Court to consider the plaintiff and the defendant in assessing the competitive effects of providing trademark protection for a formerly-patented configuration. Even if the Court accepted Briles' argument that Allfast owns a patent for a rivet functionally superior to the ring-dome-headed rivet, other manufacturers would be able to take advantage of neither one, should Briles obtain trademark protection beyond the life of its own patent. Again, this is precisely the result sought to be avoided by *Qualitex*, supra.

The lack of availability of alternative designs which can effectively be sold to Boeing to fulfill its procurement requirements for the BACR15FV rivet therefore also favors a

---

**16.** See note 6 supra.

finding of the functionality of the ring dome headed rivet.

Because all three factors argued by the parties favor a finding of functionality, this Court concludes that the ring dome headed rivet is FUNCTIONAL, and GRANTS plaintiff's motion for summary adjudication of this issue.

## V. Defendants' RULE 56(f) MOTION

By motion filed April 15, 1998, defendants seek a continuance pursuant to Fed.R.Civ.P. 56(f).

### A. Applicable Legal Standards

▬ Fed.R.Civ.P. 56(f) permits continuance of a motion for summary judgment when further discovery is needed by the nonmovant in order to present "facts essential to that party's opposition." Fed.R.Civ.P. 56(f). A declaration in support of a Rule 56(f) motion should show facts establishing a likelihood that controverting evidence may exist as to a *material* fact; the specific reasons why such evidence cannot be presented at the present time; and the steps or procedures which the opposing party intends to utilize to obtain such evidence. *VISA v. Bankcard Holders,* 784 F.2d 1472 (9th Cir. 1986) (emphasis added); *Terrell v. Brewer,* 935 F.2d 1015, 1018 (9th Cir.1991).

### B. Discussion

▬ Defendants' Rule 56(f) motion and supporting Declaration seek discovery solely on the issue of the availability of alternative products, and specifically, aspects of the worldwide rivet market, including the costs associated with qualifying an alternative rivet *design* as opposed to qualifying as an alternative *supplier* of an already-qualified rivet design. (Def.'s 56(f) Mot. 6:11–10:8, 11:15–14:17; Hummer Decl. ¶ 10–26.) (Much of the other evidence defendant seeks to discover is uncontroverted; for example, that Boeing is not the only customer for the Briles rivet (7:16–17); that Boeing does not specify the Briles rivet for all aircraft (7:18–20); and that the ring dome rivet has secondary meaning (10:18–20).) The defendants do not propose to discover evidence controverting the fact that Boeing has specified the ring-headed rivet, currently exclusively manufactured by Briles, for 26 of its planes, or controverting the fact that as matters now stand, no competitor's rivet is therefore "available" to Boeing for any plane employing the BACR15FV specification. Therefore, the additional discovery sought would not raise a genuine issue of material fact as to the lack of availability of alternative designs which can be sold to Boeing to fulfill its procurement requirements for the BACR15FV rivet.

Furthermore, the Court has not relied exclusively on the "availability of alternative design" factor in determining this motion, and would not reach a different result in light of the strong showing plaintiff has made as to the other factors supporting the Court's finding that the rivet head design at issue in this case is functional. On this basis, the defendants have not shown "that controverting evidence may exist as to a *material* fact," as required by *VISA,* and defendants' Rule 56(f) motion is therefore DENIED.

## VI. CONCLUSION

The Court GRANTS plaintiff Allfast's motion for summary adjudication that the ring dome headed rivet product configuration trade dress IS FUNCTIONAL and therefore is not protected by the trademark laws. The Court DENIES defendants' Rule 56(f) motion.

**IT IS SO ORDERED.**